PEOPLE v. KEISWETTER.

1. HOMICIDE—GROSS NEGLIGENCE—ELEMENTS OF INVOLUNTARY MANSLAUGHTER BY AUTOMOBILES.

To convict upon a charge of involuntary manslaughter through gross negligence in the operation of a motor vehicle, the people are required to prove (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avoid injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avoid the threatened danger when to the ordinary mind it must have been apparent that the result was likely to prove disastrous to another (CL 1948, § 750.321).

2. SAME—AUTOMOBILES—GROSS NEGLIGENCE—INVOLUNTARY MANSLAUGHTER—EVIDENCE.

Claim by defendant that there was insufficient evidence to support a jury verdict finding him guilty of involuntary manslaughter through gross negligence in the operation of an automobile *held*, without merit, where there was evidence that defendant had been consuming intoxicating beverages prior to an accident, that he was driving at a speed of 60 miles per hour in a 25-mile-per-hour

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 26 Am Jur, Homicide § 215.
7 Am Jur 2d, Automobiles and Highway Traffic § 278 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error § 600.
[4, 10] 5 Am Jur 2d, Appeal and Error § 623.
[5] 5 Am Jur 2d, Appeal and Error § 726.
[6] 26 Am Jur, Homicide § 368 *et seq.*
[7] 26 Am Jur, Homicide § 492.
[8] 26 Am Jur, Homicide § 515 *et seq.*
[9] 39 Am Jur, New Trial §§ 117–120, 190.
[11] 39 Am Jur, New Trial § 158 *et seq.*
[12–14] 39 Am Jur, New Trial § 157.

zone, that after striking one vehicle traveling in the same direction, his automobile continued at a high rate of speed for some 368 feet, traveling through a stop street and crashing almost head on into decedent's vehicle which was pushed backwards some 63 feet, following which defendant's vehicle continued forward, striking another vehicle, since such evidence amply supported the jury verdict (CL 1948, § 750.321).

3. APPEAL AND ERROR—ADMISSIBILITY OF EVIDENCE—OBJECTIONS.
Evidence is presumed to have been lawfully admitted where no proper objections thereto were made at trial.

4. SAME—INSTRUCTIONS—OBJECTIONS—QUESTIONS REVIEWABLE.
A party must make timely objection at the trial level in order to preserve, for appeal, the question of the propriety of an instruction given to the jury.

5. SAME—INVOLUNTARY MANSLAUGHTER—INTOXICATION—QUESTIONS REVIEWABLE.
Claim of defendant, convicted of involuntary manslaughter, that reversible error was committed by allowing the admission of evidence that he had been drinking intoxicating beverages when there was no charge of intoxication in the information, *held,* not properly before the Court of Appeals, where defendant made no objection to such testimony or instructions thereon during trial, since evidence is presumed to have been lawfully admitted where no proper objection was made thereto (CL 1948, § 750-.321).

6. HOMICIDE — AUTOMOBILES — INVOLUNTARY MANSLAUGHTER — EVIDENCE — INTOXICATING LIQUORS — RES GESTAE.
Admission into evidence of testimony that defendant, convicted of involuntary manslaughter in the operation of an automobile, had been drinking intoxicants prior to the accident *held,* proper and in any event admissible as part of the *res gestae* (CL 1948, § 750.321).

7. SAME—RES GESTAE WITNESSES—REMARKS OF COUNSEL.
Claim by defendant, convicted of involuntary manslaughter, that reversible error was committed by the prosecutor who, in the presence of the jury, offered indorsed witnesses to defendant for cross-examination, stating that their testimony would be cumulative, *held,* harmless error, where no objection was made to this procedure at trial, the issue was not raised until defendant's second motion for new trial, and the record fails to indicate that such procedure resulted in a miscarriage of justice, since error, under such circumstances, is not a ground for reversal or a new trial unless an examination of the entire record

affirmatively establishes that such error resulted in a miscarriage of justice (CL 1948, §§ 750.321, 769.26).

8. SAME—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS—QUESTIONS REVIEWABLE.

Claim by defendant, convicted of involuntary manslaughter, that the trial court committed prejudicial error in instructing the jury that they might convict defendant on the basis of unlawful acts committed by him when the information specifically charged no unlawful acts *held,* not properly before the Court of Appeals, where defendant made no objection to such instruction as required by applicable court rule, since error cannot be raised for the first time on appeal unless justice so requires (CL 1948, § 750.321; GCR 1963, 516.2).

9. TRIAL—ADDITIONAL INSTRUCTIONS—COURT RULES.

Reading to the jury, at its request, portions of instructions initially given by the trial court *held,* not the giving of further instructions within the meaning of the applicable court rule which allows objections to supplemental instructions to be made in a motion for new trial (GCR 1963, 516.4).

10. APPEAL AND ERROR—QUESTIONS REVIEWABLE—OBJECTIONS—ADDITIONAL INSTRUCTIONS.

Alleged errors in instructions given by the trial court to the jury, at its request, and following the giving of initial instructions *held,* not properly before the Court of Appeals, where such instructions were merely a repetition of a portion of the instructions initially given by the trial court, and defendant made no objection thereto until his second motion for new trial, since the reiteration of such instructions was not the giving of further instructions within the meaning of the applicable court rule allowing objections to supplemental instructions to be made on a motion for new trial (GCR 1963, 516.4).

11. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

The rule concerning granting a new trial on the basis of newly discovered evidence requires (1) that the evidence be newly discovered, (2) that the evidence be not merely cumulative, (3) that the evidence be such as to render a different result probable on retrial, and (4) that the defendant could not with reasonable diligence have produced it at trial.

12. SAME—NEWLY DISCOVERED EVIDENCE—DISCRETION OF COURT.

The granting of a new trial on grounds of newly discovered evidence is largely a matter of discretion for the trial court.

13. SAME—NEWLY DISCOVERED EVIDENCE—TRIAL.

> The trial judge who presided at a jury trial, heard all the witnesses, observed the demeanor as well as the testimony of the witnesses whose testimony was claimed to be newly discovered evidence, is in the best position to determine whether the new evidence would tend to produce a probable different result on retrial.

14. HOMICIDE—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—INVOLUNTARY MANSLAUGHTER—DISCRETION OF COURT.

> Denial of new trial to defendant, convicted of involuntary manslaughter, on the basis of newly discovered evidence, *held*, not an abuse of discretion, where trial judge found that although the evidence was newly discovered and there was no lack of diligence on the part of defendant, such new evidence only supported the testimony given by defendant and his expert witness at the initial trial, was merely cumulative, and was unlikely to render a different result probable on retrial (CL 1948, § 750.321).

Appeal from Emmet; Fenlon (Edward H.), J. Submitted Division 3, March 8, 1967, at Grand Rapids. (Docket No. 2,355.) Decided July 10, 1967. Amended opinion filed and rehearing denied September 20, 1967. Leave to appeal denied December 12, 1967. See 379 Mich 791.

Thomas D. Keiswetter was convicted of involuntary manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Wayne Richard Smith,* Prosecuting Attorney, for the people.

*Philip A. Gillis,* for defendant.

HOLBROOK, J. In September, 1965, defendant, Thomas D. Keiswetter, was convicted by a jury of the offense of involuntary manslaughter by the operation of an automobile. The charge in the information is set forth in the footnote.*

---

* "did then and there operate a certain motor vehicle, to-wit: a 1958 Ford sedan bearing the registration number WH 04 46 year 1965 on a public highway in the State of Michigan, to-wit: on east Mitchell street near its intersection with Kalamazoo avenue in said city [Petoskey] in a negligent, reckless, wilful and felonious manner

The testimony introduced by the people evidenced the following facts: That on May 22, 1965, defendant, then of the age of 19, was the owner of a 1958 Ford automobile. In the late afternoon of that day around 5:30 p.m., defendant Keiswetter went to the apartment of Donald Swanson. During the early evening hours, a number of persons were present at the apartment and intoxicants were consumed by defendant and others. At approximately 8:30 p.m. defendant together with Donald Swanson and Robert Barrett left the apartment taking beer with them and placing it in Keiswetter's car. Defendant drove the automobile and they were bound for the Club Ponytail, proceeding on Michigan street in a westerly direction and turning north one block onto east Mitchell street. They then proceeded easterly on Mitchell street for several blocks stopping in front of Karamol's tavern in downtown Petoskey. Robert Barrett left the car and returned with a dozen bottles of beer. Then with Keiswetter driving, Swanson sitting in the middle of the front seat and Barrett sitting in front next to the right window, the vehicle was driven easterly on Mitchell street. Beginning approximately one block from Karamol's tavern, Mitchell street becomes a hill 3 blocks in length until it intersects Lockwood avenue. At this point, the grade becomes slight and fairly level. The Keiswetter vehicle climbed the Mitchell

and at an immoderate and unlawful rate of speed in wilful and wanton disregard of the rights and safety of others, and at a speed and in a manner likely to endanger persons and property and thereby injure and kill persons, in that he, the said Thomas D. Keiswetter did drive and operate said vehicle at said time and place at a high and unlawful rate of speed, sideswiping a 1965 Mustang automobile and continuing at a high rate of speed through the intersection of Mitchell and Kalamazoo streets striking almost head on a 1962 Chevrolet automobile owned by one Forrest Kauffman, thereby inflicting grievous bodily injury upon Elise Grace Kauffman, a passenger in said automobile so stricken, from the effects of which the said Elise Grace Kauffman did thereafter immediately die; wherefore the said Thomas D. Keiswetter is guilty of involuntary manslaughter." (CL 1948, § 750.321 [Stat Ann 1954 Rev § 28.553].)

street hill, traveling about 60 miles per hour as it came over the crest of the hill. Eighty-five feet east of the intersection of Mitchell and Ottawa which is located one block east from the crest of the hill, the left front of the Keiswetter vehicle struck the right side of a 1965 Mustang driven by Warren P. Townes. The Mustang had just previously turned on to Mitchell street from Ottawa street to travel east on Mitchell, had completed its turn and was in the left lane of Mitchell street next to the center line. The Mustang had made a slow, normal turn and its driver and occupant had both made observations prior to entering Mitchell street and saw nothing coming. The Keiswetter Ford passed the Mustang on the right after striking it and continued on at a high rate of speed another 368 feet, through the intersection of Mitchell and Kalamazoo avenues. This intersection was controlled by a stop sign and a flashing red light. Keiswetter ran through this intersection, crossing the center of the street and struck almost head on a 1962 Chevrolet station wagon owned and driven by Forrest G. Kauffman which was about to stop at the intersection and was facing in a westerly direction on Mitchell street in its own proper lane. Elise Grace Kauffman, a passenger in her husband's vehicle, was killed almost instantly as a result of the collision. After impact the Kauffman vehicle was driven backwards 63 feet over the curb on Mitchell street. The Keiswetter car continued on, striking another westbound car before coming to a stop. Keiswetter's passenger, Donald Swanson, fled the scene. Passenger Robert Barrett was thrown from the car and driver defendant Keiswetter was found lying on the front seat. The speed limit on Mitchell street was 25 miles per hour. Numerous witnesses estimated Keiswetter's speed at 60 miles per hour prior to and after the impact with the Mustang.

On October 11, 1965, after conviction, defendant made a motion for a new trial. A hearing was held November 5, 1965, with testimony taken from Robert Barrett in support of defendant's motion. The motion for new trial was denied on January 11, 1966, and defendant was sentenced to a term of 1 to 15 years in prison. Thereafter, a supplemental motion for new trial was filed on April 18, 1966. After a hearing, the trial court denied the same on May 31, 1966. Defendant thereupon appealed to this Court.

Defendant raises several issues which will be considered in proper order.

1. *Was there sufficient evidence presented to support a conviction of involuntary manslaughter?*

The people were required to prove and beyond a reasonable doubt that defendant caused the death of Mrs. Kauffman due to the operation of his automobile. The information charged defendant with gross negligence and the people were required to prove the following 3 elements present: (a) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (b) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; and (c) the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must have been apparent that the result was likely to prove disastrous to another.

A review of the record and the testimony enumerated herein satisfies us that there was ample evidence to prove defendant guilty of gross negligence and if believed by the jury to justify the verdict of guilty of involuntary manslaughter.

2. *Where an information for involuntary manslaughter does not charge the defendant's intoxication, is it error to admit evidence of the defendant's drinking and submit this to the jury in proof of his negligence?*

Counsel for defendant did not object to the testimony nor to the instruction of the court. We presume evidence admitted was lawfully admitted where no proper objections were made at the trial. *People* v. *Jury* (1966), 3 Mich App 427; *People* v. *Robinson* (1955), 344 Mich 353.

To consider the question of propriety of an instruction given to the jury, the party raising such an objection must have preserved that right by timely objection at the trial level. This the defendant did not do. *Nuccio* v. *Severini* (1965), 374 Mich 189.

In any event, we conclude and rule that the fact that defendant was drinking was a part of the *res gestae.* *Case* v. *Vearrindy* (1954), 339 Mich 579.

3. *Was it error for the prosecution in the presence of the jury to offer indorsed witnesses to the defendant for cross-examination and to state that their testimony would be cumulative?*

Defendant did not object to this procedure on trial. It was advanced as error for the first time in defendant's supplemental motion for new trial.

The trial judge in ruling on this issue stated as follows:

"The court finds that while the procedure thus followed was irregular and the remark made by the prosecuting attorney that the testimony of the witnesses so offered would be cumulative should not have been made, no serious prejudicial error was committed thereby. *People* v. *Ruggero,* 223 Mich 368, cited by counsel as controlling, is clearly distinguishable from the case at bar. In *Ruggero,* a morals case, the testimony of the complainant child was uncorroborated. The State rested its case upon the sole testimony of the child and then made the offer of three witnesses indorsed on the information for cross-examination. The offer thus made, where the witnesses were not afterwards called, was held prejudicial, although the court instructed the jury to disregard the incident.

"The people here presented six direct witnesses who testified to the happenings on Mitchell street near Ottawa on the evening in question. The offer of several additional witnesses for cross-examination in the presence of the jury under the circumstances was not prejudicial."

We point out also that counsel for defendant evidently did not believe it to be prejudicial at the time of trial for he did not object at that time nor did he raise it as a reason for granting a new trial in his first motion.

This error is not a ground for reversal or granting a new trial unless we find after an examination of the entire cause that it affirmatively appears that it has resulted in a miscarriage of justice. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096); *People* v. *Wilcox* (1942), 303 Mich 287; *People* v. *Medcoff* (1955), 344 Mich 108; *People* v. *Ritholz* (1960), 359 Mich 539. Under the facts in this case we agree with the trial judge's determination that the error was not prejudicial nor did it result in a miscarriage of justice.

4. *Defendant asserts that inasmuch as the information did not specifically charge defendant with having committed unlawful acts it was error for the trial judge to instruct the jury that they may convict on the basis of unlawful acts committed by the defendant.*

No objections were made to the instructions in question at the trial as required by GCR 1963, 516.2 and therefore this asserted error cannot be raised in this Court at this time unless we determine justice so requires. *People* v. *Limon* (1966), 4 Mich App 440; *People* v. *Willis* (1965), 1 Mich App 428. Also, see *People* v. *Cassiday* (1966), 4 Mich App 215.

After reviewing the entire record and the instructions we are not convinced that justice requires further consideration of this objection.

Defendant claims error in the supplemental in-

structions of the court and relies on his second motion for new trial to save such error under GCR 1963, 516.4. However, we find that the supplemental instructions were only a reiteration of the main instructions.

Counsel for defendant approved the main instructions of the court, when given an opportunity to object in accord with GCR 1963, 516.2.

The supplemental instructions, so-called, were a part of the main instructions requested by the jury to be given again and were not new or supplemental, *i.e.*, different in content.

We conclude that the reading by the court of the main instructions or parts thereof as requested by the jury are not within the exception provided for by GCR 1963, 516.4.

5. *Did the trial judge abuse his discretion in denying a new trial as requested by defendant on the basis of newly discovered evidence consisting of the testimony of one of the passengers in defendant's automobile who claimed to have recovered his memory after the jury's verdict of guilty?*

The trial judge in disposing of this ground stated:

"The court has given careful consideration to the affidavit of and the testimony adduced by Robert Barrett in support of defendant's motion for a new trial, as it relates to the claim of newly discovered evidence. From such consideration, the court finds that the proposed new evidence, although it may tend to corroborate the testimony of defendant and of defendant's theory of the case, would merely be cumulative and unlikely to affect the result in the event of a new trial."

The rule concerning granting a new trial on the basis of newly discovered evidence requires that the following 4 factors must be present: (a) That the evidence is newly discovered, (b) that the evidence is

not merely cumulative, (c) that the evidence is such as to render a different result probable on retrial, (d) that the defendant could not with reasonable diligence have produced it at trial. *People* v. *Bauman* (1952), 332 Mich 198; *People* v. *Paugh* (1949), 324 Mich 108.

Barrett testified on the hearing for new trial and corroborated defendant's claims, stating that defendant's "foot was jammed and the accelerator was all the way down between the brake on a sort of crooked angle, he caught the corner of it." He explained that this was the result of the defendant putting his foot on the brake after the first collision with the Mustang. That thereafter defendant did not have control of his car. Barrett's testimony also showed a lack of recollection as to where he purchased the brandy that evening or where the beer had been purchased as well as other details concerning what had happened that evening. On the trial an expert for defendant testified in part as follows:

"The evidence of force of the impact between the Ford and the Mustang in the first collision, I concluded that the reason that the accelerator—or that the vehicle accelerated so greatly was that on the first impact between the Ford and the Mustang, it jolted the driver of the Ford forward and his foot pressed onto the accelerator pedal, dislodging it from its mountings, and shoving it forward."

Defendant testified at the trial that on the evening in question, Barrett was "not in too good of shape" and the other passenger in defendant's automobile testified under cross-examination that the Barrett boy had been drinking beer and liquor rather heavily on the night in question.

The trial judge accepted the fact that 2 of the 4 factors necessary were present in this case—the evidence in itself was new and there was no lack of

diligence shown. However, the presence of the other 2 factors: whether the evidence was cumulative, and whether it would tend to render a different result probable on retrial were at issue.

The trial judge determined that the proffered newly discovered evidence would merely be cumulative and unlikely to affect the result in the event of a new trial.

In the case of *Pollock* v. *Farmers Mutual Fire Insurance Company* (1957), 349 Mich 12, the Court held that it was not error to deny a new trial motion where the new evidence was cumulative and unlikely to result in a different verdict if retried. See, also, *People* v. *English* (1942), 302 Mich 463; *People* v. *Serra* (1942), 301 Mich 124.

The trial judge presided at the jury trial, heard all the witnesses, observed the demeanor, as well as heard Barrett's testimony which was the claimed newly discovered evidence and we believe he would without question be in the best position to determine whether the new evidence would tend to produce a probable different result on a retrial. The granting of a new trial on grounds of "newly discovered" evidence is largely a matter of discretion for the court. *Reardon* v. *Buck* (1952), 335 Mich 318; *Attorney General* v. *Lapeer Farmers' Mutual Fire Insurance Association* (1950), 327 Mich 333; *Luckhurst* v. *Schroeder* (1914), 183 Mich 487.

We conclude under the facts in this case that the judge's determination that the newly discovered evidence was cumulative and was not such as to render a different result probable on a retrial and resulting denial of defendant's motion was not an abuse of discretion.

Affirmed.

Fitzgerald, P. J., and Burns, J., concurred.