PEOPLE v JONES

Docket No. 77-2784. Submitted May 1, 1979, at Lansing.—Decided August 21, 1979.

Robert Jones, Jr., was charged with kidnapping, breaking and entering an occupied dwelling with intent to commit kidnapping, assault with a gun and assault with a knife. Prior to trial, defendant filed a motion *in limine* to suppress any evidence of his prior convictions should he elect to testify on his own behalf. The Bay Circuit Court, John X. Theiler, J., refused to suppress evidence of a 1960 burglary conviction and a 1952 grand larceny conviction and held that evidence of a 1967 second-degree murder conviction could only be used if the crime were referred to as a "felony".

The testimony of the victim, Rosemary Mecomber, given at the preliminary examination was read into the record at trial, since Ms. Mecomber had died before trial. Ms. Mecomber testified that defendant, upon being admitted to her home, confronted her with his belief in an improper acquaintance between her and a friend. Defendant placed a knife to her neck, told her to leave the house with him and, while indicating that they would be gone only 15 minutes and permitting her to check her sleeping children, threatened to kill her if she woke her children. Ms. Mecomber indicated that she was able to lock defendant outside the front door of her home and telephone for help before he broke in and pulled the telephone cable from the wall. Defendant forced Ms. Mecomber through

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Abduction and Kidnapping §§ 1, 9, 11.

75 Am Jur 2d, Trial §§ 496-500.

Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 43 ALR3d 669.

[2] 5 Am Jur 2d, Appeal and Error § 623.

[3, 4] 29 Am Jur 2d, Evidence §§ 320, 327.

[4] 29 Am Jur 2d, Evidence § 330.

Right to impeach credibility of accused by showing prior conviction, as affected by remoteness in time of prior offense. 67 ALR3d 824.

the back door, picked up a rifle leaning against the fence, forced her over or under the rear fence and then took her by car to a deserted farm some miles away. At the farm defendant ordered Ms. Mecomber to hold a light while he put brake fluid in the car. Defendant exhibited erratic behavior and on at least two occasions pointed the rifle at her before she managed to calm him. Defendant drove Ms. Mecomber back to a spot one half block from her house and he let her go after she had given defendant a dollar.

Defendant moved for a directed verdict on the ground that the evidence presented at trial was insufficient to show an asportation of the victim. The motion for a directed verdict was denied. Defendant was found guilty of the kidnapping count only. Defendant appeals. *Held:*

1. The trial court properly denied the motion for a directed verdict on the kidnapping count, since the evidence presented created a question of fact for the jury as to whether the movement of the victim was merely incidental to defendant's assaults upon the victim. Since upon that evidence the jury could have found the required element of an asportation, the question of whether there was a kidnapping was properly submitted to the jury.

2. The jury instructions, when considered as a whole, were proper. In any event, appellate review was not preserved, since defendant made no request to charge before the trial court and failed to object to the instructions as given. Defendant failed to show that manifest injustice resulted from the instructions as given.

3. The trial court abused its discretion in its determination of the defendant's *in limine* motion to suppress any reference to his prior convictions. The 1952 and 1960 convictions are too remote in time to be of sufficient value to justify their use in impeaching defendant's credibility, particularly since, because of the death of the victim, the testimony of defendant might help to illuminate the events of the night in question. It was further improper to permit impeachment by using evidence of the 1967 second-degree murder conviction by limiting any reference to that conviction to that of an unspecified "felony". Such reference would prevent the jury from making any rational evaluation of defendant's past conduct on his credibility, while presenting the real possibility of jury speculation and consequent prejudicial impact on the rights of the defendant. Since the trial court's failure to properly exercise its discretion as to the admissibility of evidence of defendant's prior convic-

tions might well have been the cause of his decision not to testify, reversal and remand is mandated.

Reversed and remanded.

1. Kidnapping — Assault and Battery — Motions — Directed Verdict — Asportation.

A motion for a directed verdict on a kidnapping count is properly denied where, upon the evidence presented, the jury could have found that the movement of the victim was not merely incidental to the defendant's assaults upon the victim, thus establishing the necessary element of an asportation.

2. Appeal and Error — Instructions — Preservation — Manifest Injustice — Court Rules.

The Court of Appeals will not review the issue of jury instructions in the absence of a request to charge at trial or an objection to the charge as given at trial unless there is a showing of manifest injustice (GCR 1963, 516.2).

3. Criminal Law — Evidence — Impeachment of Defendant — Prior Convictions — Unspecified Felony — Credibility.

It is improper to permit impeachment of a criminal defendant's credibility by allowing the admission of evidence of his prior conviction of an unspecified felony, since proof of an unspecified felony prevents the jury from making any rational evaluation of the defendant's past conduct or his credibility.

4. Criminal Law — Evidence — Impeachment of Defendant — Prior Convictions — Remoteness — Probative Value.

It is an abuse of discretion to permit impeachment of a criminal defendant's credibility by allowing the admission of evidence of his prior convictions occurring 17 and 25 years before trial, since there is limited probative value of evidence of those convictions because of their temporal remoteness, and where there could be no illumination of the events surrounding the charged acts from other than defendant because of the death of the only other witness prior to trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene C. Penzien,* Prosecuting Attorney, and *Thomas E. Bock,* Assistant Prosecuting Attorney, for the people.

*Janet Tooley* and *Nora J. Pasman,* Assistant

State Appellate Defenders, for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER and W. VAN VALKENBURG,* JJ.

PER CURIAM. The defendant was charged with four offenses, including kidnapping, MCL 750.349; MSA 28.581, breaking and entering an occupied dwelling with intent to commit kidnapping, assault with a gun and assault with a knife. His jury trial resulted in conviction on the kidnapping charge only. Following imposition of a sentence of 10 to 20 years imprisonment, he brings this appeal as of right.

Of the numerous issues brought before this Court on appeal, three call for comment and one mandates reversal of the conviction and remand for a new trial.

The defendant first contends that the evidence presented at trial was insufficient to show an "asportation" of the victim within the meaning of the kidnap statute and that the trial judge therefore was in error in denying the defendant's motion for a directed verdict on this charge.

The standard governing the consideration of a motion for a directed verdict is set forth in 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 632, p 238:

"The test to be applied on a motion for a directed verdict is not whether the evidence presented proves guilt beyond a reasonable doubt but whether there is any evidence at all on each material element of the offense. If there is, then the trial should proceed to conclusion, at which time the fact finder then decides

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

whether or not the evidence is sufficient to establish guilt beyond a reasonable doubt. An appellate court tests the correctness of the denial of a motion to direct a verdict of acquittal by taking the evidence presented by the prosecution in the light most favorable to the prosecution and deciding if there was any evidence upon which the trier of fact could predicate a finding of guilty. A reviewing court must determine whether that evidence, if credible and believed, would justify a reasonable man in concluding that all elements of the crime were established beyond a reasonable doubt."

The testimony crucial to this matter is that of the victim, Rosemary Mecomber.[1] Ms. Mecomber testified that she admitted the defendant to her Bay City home on the evening of April 8, 1976. Almost immediately upon admittance, the defendant confronted Ms. Mecomber with an apparent belief in an improper acquaintance between her and her "little friend" Jackson. He placed a knife against her neck, told her to don her coat and leave the home with him, and indicated that "he had witnesses to something, but he didn't say what it was". The defendant told Ms. Mecomber that they would be absent from the home only 15 minutes and allowed her to check on her sleeping children, but threatened to kill her "right there" if she woke them.

Ms. Mecomber stated that she managed to lock the defendant outside the front door of her home and telephone for help before he broke in and pulled the telephone cable from the wall. The defendant then forcibly pulled Ms. Mecomber through the back door, picked up a rifle that was leaning against a fence at the rear of the house and pushed Ms. Mecomber over or under the back

[1] Rosemary Mecomber died before trial. Her preliminary examination testimony was read at the trial.

fence. She testified that she had not seen the rifle before that time.

Ms. Mecomber accompanied the defendant to a car parked more than one block from her home and rode with him some miles to a deserted farm in Munger. At the farm the defendant ordered Ms. Mecomber to hold a light for him while he put brake fluid in the car. The defendant exhibited erratic behavior and took the rifle from the car and pointed it at her at least twice before she managed to calm him. The pair drove back to Ms. Mecomber's home, stopping one-half block from her house when they observed police gathered there. She gave the defendant a dollar and returned to her home.

The defendant argues that at most this evidence illustrates a traveling "lovers' quarrel" and that the compelled restraint and movement of Ms. Mecomber was "incidental" to the "underlying" or "true" crime of assault.

Disposition of this issue is controlled by *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973), in which the Supreme Court noted that the kidnap statute had within it the possibility of converting lesser crimes—such as assault—into the capital offense of kidnapping due to its broad mandate that an actor must not "confine or imprison" another person against his will. Adopting the observation of this Court in the same case (34 Mich App 546; 192 NW2d 19 [1971]) that a victim may be confined or imprisoned for the purpose of committing upon him a "lesser" assaultive crime, the Supreme Court adopted Judge LEVIN's requirement that the element of asportation be a confinement or imprisonment having a "significance independent of the assault". 34 Mich App at 551. The Supreme Court noted:

"Whether or not a particular movement constitutes statutory asportation or whether there is an appropriate alternative element must be determined from all the circumstances under the standards set out above and is a question of fact for the jury." 389 Mich at 238.

In the case at bar, as in *Adams,* it was proper to submit to the jury the question of what the "true" crime was. The evidence clearly could support a finding of a mere assault; however, contrary to the defendant's contention, it is also capable of supporting a finding that the defendant, intentionally and without justification or excuse, forcibly carried Ms. Mecomber away against her will for purposes which were not merely incidental to or in preparation for his later assaultive behavior. We note that the defendant's initial demand of Ms. Mecomber was that she accompany him away from the house and that he claimed he "had witnesses to something" who were obviously not present with him in Ms. Mecomber's home. It also appears that the defendant had prepared for the trip by placing a rifle near the rear of the house. These facts indicate that the defendant's removal of Ms. Mecomber from her home was not merely incidental to the assault which compelled her compliance with his demand.

The evidence also indicates that at the terminus of his trip with Ms. Mecomber, the defendant again engaged in an assault on her. The defendant refers to cases in which victims have been moved before "lesser" crimes have been committed, and urges this Court to hold that the only possible significance of the compelled trip was to enable this later transaction to be carried out in privacy, citing *People v Hempton,* 43 Mich App 618; 204 NW2d 684 (1972).

It is true that the jury could have found that

there was no significance to the trip apart from the later assault. However, this result is not the only one possible. While the unequivocal showing of an "underlying crime" motive will negate the independent significance of an abduction, it is not necessary that some other specific intent be proved in order to accomplish the prosecutorial goal of showing a legally sufficient asportation of the victim. Even if the defendant's purposes in removing Ms. Mecomber from her home were totally unexplained, it would not be impossible or improper for the jury to find that the crime which followed the abduction was not the "true" crime of the evening and did not rob the abduction of its "independent significance". A conviction of kidnapping requires proof of no intent more specific than an intent to confine or imprison another person against his will. See *People v Nodine,* 36 Mich App 80; 193 NW2d 172 (1971). The evidence does not unequivocally show that the defendant's removal of Ms. Mecomber from her home was merely incidental to any other offense; therefore, the motion for a directed verdict was properly denied.

The defendant also claims that the jury instructions concerning the relationship of the assault charges to the asportation requirement of the kidnap charge were confusing and prejudicial.

The instructions of the court cover 44 pages of the transcript. At the outset, the normal and usual instructions were given. Thereafter, the judge meticulously explained each and every element of the various alleged crimes. True, some were repeated, such as the requirement that asportation as an element of kidnapping had to be of independent significance and not merely incidental to any underlying offense or act on the part of defendant, but this was done in order to give the members of

the jury a clear understanding of rather complicated principles of law. The jury was told in no uncertain terms that the defendant could not be found guilty of both kidnapping and breaking and entering and that the assault charges could not be considered if there was a finding that they were a part of the kidnapping scheme.

After explaining the elements of kidnapping in detail, the court summarized as follows:

"Repeating then the elements that must be shown in order for there to be kidnapping, first, that Rosemary Mecomber had to be forcibly confined or imprisoned. Second, that she was so confined and imprisoned against her will and without lawful authority, and that confinement was either secret or that there was an asportation or transportation independent of any underlying offense that might have been then ongoing.

"And finally, that at the time the actions were done, that this was done with the intent to kidnap the victim. And finally, that at the time of such confinement the Defendant must have been acting wilfully and maliciously. Wilfully and maliciously means that the Defendant intentionally confined the victim knowing it to be wrong and he did so without legal justification."

Counsel in defendant's brief contends that the trial judge should have referred to the lesser or underlying offenses as felonious assaults. It is difficult to understand how the jury could have been confused in view of the careful explanations shown in the record.

Actually, the issue was not preserved for appellate consideration, since counsel presented no request to charge on this issue and indicated his acceptance of the instructions, and manifest injustice has not been shown. GCR 1963, 516.2; *People*

*v Keiswetter,* 7 Mich App 334; 151 NW2d 829 (1967).

Furthermore, appellate courts have repeatedly stated that jury instructions must be considered as a whole. When so analyzed, the instructions upon which defendant now premises reversible error actually work in his favor.

Lastly, the defendant contends that the trial judge abused his discretion in denying defendant's motion *in limine* to suppress prosecution reference to his prior convictions should he elect to testify in his own behalf. The convictions were all from Tennessee courts: second-degree murder (1967), burglary (1960) and grand larceny (1952). The trial in this matter was held in 1977.

The trial judge refused to suppress evidence of the burglary and grand larceny convictions but held that the murder conviction could only be designated a "felony" before the jury. The defendant elected not to take the stand, restricting his defense to an attack upon the credibility of the deposition testimony of Ms. Mecomber.

The trial judge has discretion to admit or exclude evidence of a defendant's prior convictions which is offered to impeach his testimony. In *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), the Supreme Court accepted the guidelines set forth in *Luck v United States,* 121 US App DC 151; 348 F2d 763 (1965), and *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967), and stated:

"Among the factors to be considered are the nature of the prior offense, whether it is for substantially the same conduct for which the accused is on trial, and the effect on the decisional process if the accused does not testify from fear of impeachment by prior convictions." 391 Mich at 333.

See also *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979).

In *Gordon, supra,* the court explained that crimes of violence have relatively little bearing on veracity while "acts of deceit, fraud, cheating or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity". 383 F2d at 940.

The *Gordon* court noted that, as the similarity between a charged offense and the offense which is offered to impeach the defendant witness increases, the danger of prejudicial impact also increases, tipping the scales against admissibility. The court stated that evidence of convictions of the same crime should be used only "sparingly," regardless of its probative value.

The *Gordon* court also noted that the probative value of evidence of prior convictions fades as evidence of the age of the convictions increases. This reasoning has been said to render evidence of stale convictions inadmissible in *People v Robinson,* 79 Mich App 145; 261 NW2d 544 (1977), and *Boyd v Wyandotte,* 402 Mich 98; 260 NW2d 439 (1977) (applying the principles of *Luck* and *Jackson* to the impeachment of a civil plaintiff).[2]

If consideration of the preceding factors leads the court to believe that the evidence of prior convictions should be admitted, the reluctance of the defendant to testify under those conditions may yet indicate that evidence of the conviction should be excluded. The trial court must consider:

"the effect on the decisional process if the accused does not testify out of fear of impeachment by prior convictions (are there alternative means of presenting a

---

[2] The ten year limitation contained in MRE 609 was not in effect at the date of trial in the case at bar; this case is controlled by the principles set forth in *Jackson* and its progeny.

defense which would not require the defendant's testimony, *i.e.,* can his side of the story be presented, or are there alternative, less prejudicial means of impeaching the defendant?)." *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978).

See also *Jackson, supra.*

The presentation of a defendant's version of the facts may be so important that it is better to admit it without impeachment by evidence of prior convictions then to do without it altogether.

In the case at bar, the importance of the defendant's testimony is great. There is an abundance of evidence linking the defendant to Ms. Mecomber on the night of the crime; however, there is an issue of great significance to which this evidence does not speak at all. Whether the removal of Ms. Mecomber from her home was, as the defendant argues, merely incidental to an ongoing assaultive lovers' quarrel or whether it had "independent significance" within the meaning of the statute is not answered by the proofs that the defendant removed Ms. Mecomber from her home at knifepoint. The crucial fact separating kidnapping from the lesser offense of assault is the defendant's purpose and motive, if any, in forcing Ms. Mecomber from her home. There is sufficient evidence in the record to support the kidnap charge. However, it is difficult to imagine how any evidence other than the defendant's testimony could show a legally insufficient "asportation" merely incidental to a lesser crime. The victim was dead at the time of trial; therefore, no further illumination of the transaction was available from the only other witness to the alleged kidnapping.

The second-degree murder conviction occurred ten years before trial, equalling or approaching the age deemed so prejudicial as to be uncondition-

ally excluded by MRE 609. Being a crime of violence, evidence of it was less indicative of testimonial incredibility than evidence of the defendant's convictions of property crimes. See *Gordon, supra.* The trial judge correctly observed that the murder conviction was likely to be viewed as similar to the kidnap charge. However, it is unlikely that the defendant's situation was at all improved by the ruling that the conviction could only be presented as a "felony". Proof of an unspecified "felony" conviction invites a jury to speculate on the nature of the crime and perhaps to assume that it was a breaking and entering, a kidnapping or an assault with a dangerous weapon, each of which was charged against the defendant in this case. At the very least, proof of the unspecified "felony" conviction prevents rational evaluation of the impact of the defendant's past conduct on his credibility and therefore cannot serve the sole purpose for which it was to be presented; at the most, it informs the jury that a "felon" is on trial for yet another felony.

Evidence of the defendant's burglary conviction may be said to bear an unacceptable similarity to breaking and entering, the crime for which the defendant was on trial; however, it is unlikely that such a similarity would have had substantial prejudicial impact on the jury, as burglary is commonly regarded as a property crime only. Evidence of the burglary conviction shares with the evidence of defendant's grand larceny conviction a freedom from undue identity with the charges brought against the defendant in this trial. However, both convictions also share the very significant infirmity of extreme temporal remoteness from the trial, having occurred 17 and 25 years before trial, respectively. The use of evidence of

felony convictions of such great age has been rejected with little consideration of other factors in *People v Robinson, supra* (assault with intent to murder, evidence of 18 year old burglary conviction improperly admitted) and *Boyd v Wyandotte, supra* (evidence of seven convictions, 10 to 19 years old, suggested to be evidence of crimes too stale to be used to impeach the testimony of a civil plaintiff).

We hesitate to interfere with the actions of a trial judge in exercising an acknowledged discretionary power. However, a review of the factors governing the admission of evidence of prior convictions leads us reluctantly to hold that that discretion has been improperly exercised in the case at bar. The defendant's convictions of burglary and grand larceny were simply too old to have been probative of his credibility as a witness in 1977.

Had it been contemplated that the prosecutor would have the opportunity to present to the jury the fact that the defendant was convicted of second-degree murder in 1967, the propriety of that decision would present an extremely close question on review. However, presentation of evidence of an unspecified "felony" conviction for purposes of impeaching the defendant's credibility says nothing of the conduct that is asserted to bear negatively on the defendant's reliability as a witness while presenting a very substantial possibility of jury speculation and consequent prejudicial impact upon the rights of the accused. The very difficult questions presented by the use of evidence of prior convictions for impeachment must be decided rather than compromised; as this case indicates, a compromise may be more injurious to a defendant than an adverse decision.

The defendant shall have the opportunity to testify at a new trial without reference to his two older convictions. The trial judge shall, upon request, exercise his discretion under the applicable rules and decide whether to admit evidence of the defendant's second-degree murder conviction, should the defendant elect to take the stand.

Reversed and remanded.