PEOPLE v WESLEY

Docket No. 47368. Submitted September 3, 1980, at Lansing.—Decided
January 23, 1981. Leave to appeal applied for.

Joe F. Wesley, Jr., was convicted of felony murder and kidnap-
ping. He was sentenced to prison for the felony-murder convic-
tion and received no sentence for the kidnapping conviction,
Genesee Circuit Court, Harry P. Newblatt, J. He appeals,
alleging that the trial court erred in determining at a *Walker*
hearing that his statement was voluntary, in admitting
fingernail-identification evidence, in determining that his code-
fendant was incompetent to testify and thus denying him his
right to confront witnesses, in denying his motion for a directed
verdict on the charge of kidnapping, in instructing the jury on
the element of asportation, and in sentencing defendant. *Held:*

1. The trial court's determination, that defendant's statement
which implicated him in the crimes charged was voluntarily
made, was not clearly erroneous and will not be reversed on
appeal.

2. The trial court erred in admitting fingernail-identification
evidence, but the error was harmless beyond a reasonable

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 839 *et seq.,* 948.
[2] 29 Am Jur 2d, Evidence §§ 831, 831.5.
[3] 29 Am Jur 2d, Evidence § 832.
[4] 5 Am Jur 2d, Appeal and Error § 786.
[5] 5 Am Jur 2d, Appeal and Error § 772.
　　21 Am Jur 2d, Criminal Law § 338.
　　81 Am Jur 2d, Witnesses § 139.
[6] 1 Am Jur 2d, Abduction and Kidnapping § 11.
　　Application of the felony murder doctrine where the felony relied
　　　upon is an includible offense with the homicide. 40 ALR3d 1341.
[7, 10]1 Am Jur 2d, Abduction and Kidnapping § 9.
　　21 Am Jur 2d, Criminal Law §§ 8, 9.
　　Application of the felony murder doctrine where the felony relied
　　　upon is an includible offense with the homicide. 40 ALR3d 1341.
[8] 29 Am Jur 2d, Evidence § 818.
[9] 5 Am Jur 2d, Appeal and Error § 772.
　　29 Am Jur 2d, Evidence § 251.

doubt since the proofs not touched by the taint of error were overwhelming and were such as to enable all reasonable jurors to find defendant guilty beyond a reasonable doubt.

3. The trial court properly determined that a codefendant was incompetent to stand trial and thus was incompetent to testify. This determination did not deny defendant his right to confront witnesses.

4. The proofs offered during trial were sufficient to allow a rational trier of facts to find defendant guilty of kidnapping beyond a reasonable doubt. The element of asportation of the victim was not shown to be incidental to the murder or to any other offense. The trial court properly denied defendant's motion for a directed verdict on the kidnapping charge.

5. The instructions of the trial court on the element of asportation, taken as a whole, left the jury with the correct view of that requirement for conviction on the kidnapping charge.

6. The trial court properly recognized on the record that it was prohibited from sentencing defendant for both convictions, but did not expressly vacate the kidnapping conviction as required. The case is remanded for such express vacation.

Affirmed in part and remanded.

M. J. KELLY, J., concurred in the result. However, he would conclude that the fingernail-identification evidence was admissible at the trial court's discretion and that the court's determination of admissibility should not be set aside on appeal absent an abuse of discretion. He would also note that defendant's conviction for felony murder should preclude his conviction for the underlying felony of kidnapping under the Double Jeopardy Clause since proof of felony murder would necessarily prove all the elements of kidnapping.

### OPINION OF THE COURT

1. APPEAL — FINDINGS OF TRIAL COURTS.

The Court of Appeals will give deference to a trial court's findings where, upon an examination of the whole record, it does not find that the trial court's determination was clearly erroneous, especially where the demeanor of witnesses is important as where credibility is a major factor.

2. EVIDENCE — POLYGRAPH TESTS — ADMISSIBILITY — EXPERT WITNESSES.

Testimony by expert polygraph-examiner witnesses is insufficient to render evidence of the results of polygraph tests admissible

during a trial; testimony must be offered that there is a contemporaneous general scientific recognition of the tests, and the admission of such evidence absent the establishment that reasonable certainty obtains from such tests constitutes error.

3. EVIDENCE — VOICEPRINT IDENTIFICATION — ADMISSIBILITY — EXPERT WITNESSES.

Testimony by expert witnesses whose reputations and careers are built on their work with voiceprint identification does not provide the general scientific recognition of voiceprint evidence necessary to allow its admission.

4. EVIDENCE — FINGERNAIL-IDENTIFICATION COMPARISONS — ADMISSIBILITY — EXPERT WITNESSES — APPEAL — ERROR.

Testimony by a specialist in human hair comparisons regarding a fingernail-comparison technique is insufficient to establish a general scientific recognition of the fingernail-identification procedure or the degree of certainty necessary to warrant the admission of the results of such procedure into evidence, but the admission of such testimony, while constituting error, is harmless beyond a reasonable doubt and does not require reversal on appeal where proofs not tainted by the error are overwhelming and are such as to enable all reasonable jurors to find a defendant guilty beyond a reasonable doubt.

5. CRIMINAL LAW — COMPETENCY — JUDICIAL DISCRETION — RIGHT TO CONFRONT WITNESSES — APPEAL — RULES OF EVIDENCE.

A determination by a trial court in a criminal case that a codefendant is not competent to testify is not an abuse of its discretion, nor does it deny a defendant his right to confront witnesses, and such determination will not be disturbed on appeal absent an abuse of discretion (MRE 601).

6. KIDNAPPING — MURDER — MOTIONS — DIRECTED VERDICTS — ASPORTATION.

A motion for a directed verdict on a kidnapping count because of a claimed lack of evidence of asportation is properly denied where, upon the evidence presented, a rational trier of facts could find that the movement of the victim was not merely incidental to, but was independent of, an underlying crime of murder and thus supplied the necessary element of asportation.

7. KIDNAPPING — MURDER — SENTENCING — VACATION OF CONVICTIONS — REMAND.

A trial court, upon imposing a sentence on a defendant convicted of both felony murder and the underlying felony of kidnapping,

must recognize on the record that it is prohibited from sentencing the defendant for both convictions and that where the kidnapping conviction is a necessary element of the felony-murder conviction under the prosecution's theory of the case the underlying felony conviction must be vacated, and failure to expressly so vacate requires remand for such vacation.

CONCURRENCE BY M. J. KELLY, J.

8. EVIDENCE — SCIENTIFIC TECHNIQUES — ADMISSIBILITY.

*Scientific evidence is admissible where a technique has gained general acceptance in the particular field in which it belongs.*

9. EVIDENCE — RELEVANCY — ADMISSIBILITY — JUDICIAL DISCRETION — APPEAL.

*Relevance of evidence offered for admission is a matter within a trial court's discretion, and a determination of admissibility by a trial court will not be set aside on appeal absent an abuse of discretion.*

10. HOMICIDE — KIDNAPPING — CUMULATIVE PUNISHMENTS — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

*The state Legislature is prohibited from imposing cumulative punishments for convictions on charges of felony murder and an underlying felony of kidnapping by the Double Jeopardy Clause of the United States Constitution where proof of the murder would necessarily prove all the elements of the underlying felony.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Richard J. Drew,* for defendant.

Before: M. F. CAVANAGH, P.J., and M. J. KELLY and BEASLEY, JJ.

PER CURIAM. Defendant was convicted as charged of felony murder, MCL 750.316; MSA 28.548, and kidnapping, MCL 750.349; MSA 28.581 by a jury. He was sentenced to life in prison for felony murder and received no sentence for the

kidnapping conviction. The defendant appeals as of right.

This prosecution arose from an incident in a bar parking lot in Flint. Two men approached each side of a car in which two women sat with the car windows rolled down. The men grabbed the women through the windows. One woman escaped and ran for help. The other was driven five blocks from the bar by the two men, a struggle ensued, a shot was fired, and the victim was found dead.

Defendant asserts several claims of error which he contends require reversal. We do not agree.

The trial court determined at the defendant's *Walker*[1] hearing that the statement the defendant gave implicating himself was voluntary. Upon an examination of the whole record, we do not find that the court's determination was clearly erroneous and so will "give deference to the trial court's findings, especially where demeanor of the witnesses [here, two police officers and the defendant] is important, as where credibility is a major factor". *People v Terlisner,* 96 Mich App 423, 431; 292 NW2d 223 (1980), *People v Hummel,* 19 Mich App 266, 270; 172 NW2d 550 (1969).

The corpus delicti of the crime was clearly established independently of and prior to the admission of the defendant's statement into evidence. The prosecution had proven that the victim had been shot and had died prior to the admission of the statement.

Defendant next claims error in the trial judge's admission of expert evidence relating to identification of the defendant by means of a fingernail analysis and comparison. A fingernail was found in the back seat of the car where the crime oc-

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

curred. The court held a hearing out of the presence of the jury to determine the admissibility of evidence of the comparison of this fingernail with fingernail samples taken from the defendant. The admissibility of a fingernail analysis is an issue of first impression in Michigan and, indeed, in the United States.

The Supreme Court in *People v Barbara,* 400 Mich 352, 364; 255 NW2d 171 (1977), in discussing the admissibility of evidence of results of polygraph tests stated:

" '[T]estimony [must be] offered which would indicate that there is at this time a general scientific recognition of such tests. Until it is established that reasonable certainty follows from such tests, it would be error to admit in evidence the result thereof.' *People v Davis,* 343 Mich 348, 370; 72 NW2d 269 (1955), quoting *People v Becker,* 300 Mich 562, 566; 2 NW2d 503 (1942)."

Several expert witnesses in *Barbara,* had had a great deal of personal experience with polygraph operation and analysis, years of personal involvement with polygraph examinations, and testified that results obtained by use of a polygraph were a respected form of evidence. But the Supreme Court held that the testimony of polygraph examiners themselves was not enough.

"While the special record before us establishes that the polygraph is accepted as reliable by polygraphers, it does not establish that polygraph analysis is accepted as reliable by the scientific community. Credentials of the witnesses, although outstanding for polygraph technicians, are not those of scientists. Therefore, unless we depart from the standard *Davis/Frye* [v *United States,* 54 US App DC 46; 293 F 1013 (1923)] test for admissibility, defendant has failed to convince us that the polygraph should be admitted into evidence at trial in our State." *Id.,* 377.

The Court in *People v Tobey,* 401 Mich 141, 146; 257 NW2d 537 (1977), refused to accept voiceprint evidence despite the testimony of experts (a professor of audiology and a police officer experienced in the area of audiology who had been a student of the professor's). The *Tobey* Court was not persuaded that these witnesses "whose reputations and careers have been built on their voiceprint work, can be said to be impartial or disinterested".

The expert in the instant case is a civilian employee of the Michigan State Police with a specialty in human hair comparisons. This expert testified that he had read of the fingernail identification technique in five forensic journals (two were English and another was German). There were no cases cited where such a technique was admitted as evidence. In a response to questioning about the technique's general acceptance in the scientific community, the expert responded:

"I personally have talked to a number of people that I know at meetings. My boss, Lieutenant Nassar went to the meeting of the American Society of Crime Laboratory Directors which is a national meeting of all crime directors asking them to examine them, asking the same questions, and the two things arose. One is that everybody—everybody there seemed to be in general agreement within this forensic science community that fingernails were indeed unique and individual, and could be used as evidence. But that no one had ever had a case involving one."

The expert's own experience in analyzing and comparing fingernail specimens has consisted of studying his own nail clippings, those of his boss which had been collected since 1972, and those of three other individuals with a "number of samples from each". We do not find that this expert's testimony was sufficient to establish "a general

scientific recognition of the fingernail identification procedure" or the "degree of certainty" from the use of the fingernail technique that would warrant admissibility. *Barbara, supra.*

The admission of the testimony regarding the identification of the defendant by use of the fingernail analysis and comparison was error where the evidence did not show a recognition and acceptance of the technique in the forensic community. We find, however, that this error was "harmless beyond a reasonable doubt" based on the overwhelming proofs, not touched by the taint of error, upon which all reasonable jurors could find guilt beyond a reasonable doubt. *People v Christensen,* 64 Mich App 23; 235 NW2d 50 (1975), *lv den* 397 Mich 839 (1976).

As to the defendant's contention that he was denied his right to confront witnesses because his codefendant was found to be incompetent to stand trial, causing the trial court to rule that he was incompetent to testify, we affirm the trial court's ruling. After testimony by an expert witness that clearly demonstrated the codefendant's incompetency to stand trial, the trial court determined that the codefendant would not have the capacity to knowingly and intelligently waive his Fifth and Fourteenth Amendment rights against self-incrimination. Accordingly, the codefendant was not allowed to testify. The trial court did not abuse its discretion in determining whether the codefendant was competent to testify, MRE 601. This Court on appeal will not disturb the trial court's findings in the absence of an abuse of discretion. *People v Eugene Johnson,* 30 Mich App 284; 186 NW2d 94 (1971), *lv den* 384 Mich 838 (1971), *People v Atcher,* 65 Mich App 734; 238 NW2d 389 (1975), *lv den* 399 Mich 866 (1977).

Defendant contends that the trial court abused its discretion in denying a motion for a directed verdict on the kidnapping charge because there was not sufficient "asportation" to support the charge. There was sufficient proof that defendant and his friend got into the victim's car and drove her five blocks against her will. A rational trier of facts could find the elements of kidnapping were proven beyond a reasonable doubt. MCL 750.349; MSA 28.581, *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), appeal to the United States Supreme Court pending.

There was no showing that the asportation of the victim was merely incidental to the murder which occurred at the end of the five-block journey. Nor was it shown to be incidental to any other offense. *People v Jones,* 92 Mich App 100; 284 NW2d 501 (1979), *People v Otis Adams,* 34 Mich App 546; 192 NW2d 19 (1971).

The defendant charges that the instructions given to the jury on the element of asportation did not make it clear to the jury that the requisite asportation for kidnapping must be determined to be independent of any underlying crime. Although one sentence of the instruction indicates "if the underlying crime involves murder, movement incidental to that is generally sufficient to establish a valid statutory kidnapping", several sentences of the instructions clearly indicate that the asportation had to be separate from the crime of murder. Taken as a whole, we find that the instructions would leave the jury with the correct impression that asportation must be found to have been independent of the underlying offense. *Jones, supra,* 109.

Finally, the trial court recognized on the record that *People v Wilder,* 82 Mich App 358, 364; 266 NW2d 847 (1978), prohibited the court from sen-

tencing the defendant for convictions of both fel-
ony murder and kidnapping, the underlying fel-
ony. "[When] the latter is a necessary element of
the former under the prosecution's theory of the
case, [the underlying felony] must be vacated."
This Court is satisfied that the trial court sen-
tenced the defendant for the first-degree murder
conviction only, however, the trial court did not
expressly vacate the kidnapping conviction. We
remand for an express vacation of the kidnapping
charge in accordance with *Wilder, supra.* As to all
other issues raised by defendant on appeal, we
affirm.

Affirmed in part, and remanded.

M. J. KELLY, J. *(concurring).* I concur in the
result reached by the majority. However, I dis-
agree with the Court's conclusion as to the admis-
sibility of defendant's fingernail for identification
purposes.

In *People v Tobey,* 401 Mich 141, 145; 257 NW2d
537 (1977), and *People v Barbara,* 400 Mich 352;
255 NW2d 171 (1977), the Supreme Court reaf-
firmed its reliance on the test for admissibility of
scientific evidence espoused in *Frye v United
States,* 54 US App DC 46, 47; 293 F 1013 (1923).
Under this test, scientific evidence is admissible
when the technique gains "general acceptance in
the particular field in which it belongs".[1]

---

[1] A recent Iowa Supreme Court ruling has criticized the *Frye* test
and announced that it will not be followed. In *State v Hall,* 297
NW2d 80 (Iowa, 1980), the majority announced four criticisms of the
rule summarized at 28 Criminal Law Reporter 1018 (1980), as follows:

"First, the *Frye* rule imposes a standard of admissibility not re-
quired of other areas of expert testimony. Second, the rule appears
inconsistent with modern concepts of evidence that allow an expert to
testify about any area of knowledge so long as the testimony assists
the trier of fact.

* * *

As I view the testimony offered to establish admissibility, it appears that the prosecutor's expert did establish the general acceptance of fingernail identification necessary for its admission. The majority characterizes witness Bisbing as having "a specialty in human hair comparisons", presumably to suggest that he was testifying concerning an area outside the scope of his professional expertise. However, a closer look at Bisbing's testimony discloses that he had a more general professional interest in the "biological individuality" of the human species and that fingernail identification was "an extension of [his] study of the human being individuality". As such, Bisbing could offer a more informed opinion than the restrictive view of the majority would permit. Also, the majority's reference to courts in prior cases refusing to accept voiceprint identifications, *Tobey, supra,* and polygraph results, *Barbara, supra,* despite testimony verifying their scientific acceptance, is not persuasive. Unlike the polygraph and voiceprint methods, the instant method of identification relies upon a direct comparison of body parts and thus more closely resembles fingerprint identifications.

In this case, after reviewing the results of his own limited tests and the more extensive results of tests conducted and reported in various scientific journals as early as 1957, witness Bisbing stated his belief that fingernail identification had gained recognition and acceptance in the field of forensic identification. We have previously held that the

"Third, * * * that [the Iowa Supreme Court] has difficulty distinguishing some scientific evidence from nonscientific evidence.

"Fourth, scientific acceptance seems a 'nebulous' concept since scientists disagree among themselves as to a method's acceptance."

The opinion concludes that proffered evidence " 'need not wait an assessment by the scientific community; the foundation evidence of reliability and the inherent understandability of the evidence itself provided sufficient bases for its admission' ".

relevance of evidence offered for admission is a matter within the trial court's discretion. See *Aetna Life Ins Co v Brooks,* 96 Mich App 310, 314; 292 NW2d 532 (1980), citing *Jarecki v Ford Motor Co,* 65 Mich App 78, 83; 237 NW2d 191 (1975), holding that "[a]dmissibility rests within the trial court's discretion and his determination will not be set aside unless there has been an abuse of discretion". The decision below appears to me to have been a rational one based upon the credibility of the expert testimony supporting admission. The trial court's decision ruling such evidence admissible should, therefore, not be disturbed.

I also write separately to note a possible shift in the United States Supreme Court's thinking regarding multiple convictions and punishments therefor. In *Whalen v United States,* 445 US 684; 100 S Ct 1432; 63 L Ed 2d 715 (1980), the Court analyzed a statute governing the imposition of cumulative punishments committed in the District of Columbia. The statute provides:

> " 'A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) *arises out of the same transaction and requires proof of a fact which the other does not.*' " DC Code § 23-112 (emphasis in original).

The High Court majority initially interpreted this provision as a legislative codification of the rule of *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), which held that " '[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to

determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *Whalen, supra,* 692. Thus, presumably, offenses subject to the *Blockburger* rule could not produce cumulative punishments. However, in ruling out cumulative punishments in *Whalen,* the Court did not rely on its constitutional rule. Instead, the Court left open the possibility for cumulative punishments for offenses considered the same under *Blockburger* if Congress so chose:

"We think that the only correct way to read § 23-112, in the light of its history and its evident purpose, is to read it as embodying the *Blockburger* rule for construing the penal provisions of the District of Columbia Code. Accordingly, where two statutory offenses are not the same under the *Blockburger* test, the sentences imposed 'shall, unless the court expressly provides otherwise, run consecutively.' *And where the offenses are the same under that test, cumulative sentences are not permitted, unless elsewhere specially authorized by Congress." Whalen, supra,* 693. (Emphasis added.)

Thus, the Court has apparently withdrawn from its position in prior cases making constitutionally impermissible the imposition of cumulative punishments for the "same offense". See *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969), citing *Ex parte Lange,* 85 US (18 Wall) 163; 21 L Ed 872 (1874), and holding that "the constitutional guarantee against multiple punishments for the same offense" requires a defendant, convicted upon retrial, to be given full credit for time served after the original conviction. Under *Whalen,* a state legislature, despite the restrictions of the Double Jeopardy Clause, would be able to impose cumulative punishments for the

same offense upon a sufficient indication of legislative intent.

The confusion brought about by *Whalen* was discussed at some length in a recent opinion of the Delaware Supreme Court, *Hunter v State,* 420 A2d 119, 130 (Del, 1980). The Delaware Court, interpreting a statute bearing some factual similarity to our own felony-firearm law, noted that it was faced with a question of validity under the Double Jeopardy Clause when the legislature intends multiple punishments for the same offense. The Court held:

"We are of the opinion that the Double Jeopardy Clause was intended to prevent double punishment regardless of the procedural context in which it is found. We can find no sound basis, in *Whalen* or elsewhere, to exempt the Legislature from adherence to this constitutional doctrine in the instant case. Multiple sentences in the same trial for the same act are equally as abhorrent to the constitutional guarantee, in our view, as multiple sentences for the same act resulting from multiple trials.

"We are not convinced that *Whalen* controls the instant case in view of the ambiguities contained therein which we find in unexplained conflict with prior double jeopardy principles which we thought settled. We are unwilling to abandon those principles until the United States Supreme Court has more clearly and definitely abandoned them."

I would join the Delaware Supreme Court in its critical view of the *Whalen* decision. To suggest on one hand that the Double Jeopardy Clause applies a constitutional ban against cumulative punishments for the same offenses, *Pearce, supra, Ex parte Lange, supra,* and then to apparently withdraw from this position without specific mention of the prior decisions, *Whalen, supra,* suggests more

of an oversight than a turnabout in constitutional analysis. As I view it, the Michigan Supreme Court recognized the proper scope of the Double Jeopardy Clause in *People v Martin,* 398 Mich 303, 310; 247 NW2d 303 (1976), and *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), each case applying the constitutional proscription to both multiple convictions and sentences for the same offense.

The facts surrounding the instant case are largely parallel to those in *Whalen.* In effect, proof of the greater offense (felony murder in both instances) would necessarily prove all the elements of the underlying felony (kidnapping in this case, rape in *Whalen).* Under the *Blockburger* test, the offenses in either case thus constitute the "same offense". Until the United States Supreme Court affirmatively disavows its position prohibiting multiple punishments for conduct violative of more than one statute, I would question the validity of a *Whalen* alternative.