PEOPLE v PHILLIP PHILLIPS

PEOPLE v GERALD PHILLIPS

Docket Nos. 77-5164, 51572. Submitted June 3, 1981, at Grand Rapids.
　—Decided January 5, 1982. Leave to appeal applied for.
　　Phillip A. Phillips and Gerald A. Phillips were convicted of
　kidnapping but were acquitted of conspiracy to commit murder,
　Ottawa Circuit Court, Calvin L. Bosman, J. Both defendants
　appeal, and the appeals were consolidated. *Held:*
　　1. The trial court erred in instructing the jury on the ele-
　ments of a citizen's arrest, but the error was harmless in light
　of the absence of any evidence of a citizen's arrest other than
　the defendants' claim during trial.
　　2. The trial court properly instructed the jury on the legal
　justification for a citizen's arrest and on the specific intent
　element of kidnapping.
　　3. The trial court did not err in failing to instruct the jury
　that the defendants could not be convicted of kidnapping if the
　asportation was incidental to the conspiracy charge because
　there is no asportation element, legally or factually, to a
　conspiracy.
　　4. The trial court did nor err in failing to instruct the jury on

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 5 Am Jur 2d, Appeal and Error § 894.
[2] 1 Am Jur 2d, Abduction and Kidnapping §§ 20, 21, 26.
[3] 1 Am Jur 2d, Abduction and Kidnapping §§ 9, 11.
　　16 Am Jur 2d, Conspiracy § 10 *et seq.*
[4] 1 Am Jur 2d, Abduction and Kidnapping § 11 *et seq.*
[5] 1 Am Jur 2d, Abduction and Kidnapping § 29.
　　63 Am Jur 2d, Prosecuting Attorneys § 27. '
[6] 4 Am Jur 2d, Appeal and Error §§ 533, 535.
　　5 Am Jur 2d, Appeal and Error § 892.
　　75 Am Jur 2d, Trial §§ 245-249, 906.
[7] 21A Am Jur 2d, Criminal Law § 1007.
　　75 Am Jur 2d, Trial § 876.
[8] 29 Am Jur 2d, Evidence § 418.
　　68 Am Jur 2d, Searches and Seizures § 44.
[9] 63 Am Jur 2d, Prosecuting Attorneys § 27.
[10] 5 Am Jur 2d, Appeal and Error § 896.
　　75 Am Jur 2d, Trial § 225.

the element of secret confinement in relation to the kidnapping charge. The court properly instructed the jury on the element of asportation and secret confinement has been held to be an alternative to the asportation element. In addition, the defendants did not object to the instruction during trial.

5. The trial court erred in instructing the jury that it is proper to consider the number of witnesses presented to testify as to the truth of a particular fact. The number of witnesses is irrelevant. However, the defendants' failure to raise an objection to the instruction during trial precludes review on appeal, no manifest injustice having been shown.

6. The trial court properly instructed the jury on a cognate lesser included offense.

7. The trial court erred in admitting evidence of the defendants' previous convictions for the purpose of impeachment. However, the record reveals that the admission of that evidence did not affect the outcome of the trial.

8. The trial court properly admitted testimony regarding the defendants' monitored conversation with a police officer. The defendants had no standing to challenge the monitoring and exigent circumstances justified this search and seizure without a warrant.

9. The defendants were not denied a fair trial by the conduct of the prosecuting attorney.

Affirmed.

1. APPEAL — CRIMINAL LAW — JURY INSTRUCTIONS — FAIR TRIAL.

A reviewing court, in determining whether a criminal defendant received a fair trial, must consider a trial court's charge to the jury in its entirety, and where the defendant claims that certain of the instructions were improper and it is determined on appeal that the instructions were not strictly correct, the reviewing court need not grant a new trial where it determines that the entire instructions could not have misled the jury.

2. APPEAL — CRIMINAL LAW — JURY INSTRUCTIONS — KIDNAPPING — CITIZEN'S ARREST.

Instructions by a trial court to a jury which adequately review the requirements for legal justification for a citizen's arrest, raised as a defense to a charge of kidnapping, and which convey to the jury that a specific intent is required for a conviction for kidnapping do not constitute grounds for reversal on appeal even though the instructions might impair the defense in light of the facts presented during trial.

3. KIDNAPPING — JURY INSTRUCTIONS — ASPORTATION — CONSPIRACY.

A trial court's failure to instruct a jury that a defendant charged with conspiracy to commit murder and kidnapping could not be convicted of kidnapping if the asportation of a victim was incidental to the conspiracy does not constitute error because conspiracy has no legal or factual element of asportation.

4. KIDNAPPING — APPEAL — JURY INSTRUCTIONS — ASPORTATION — SECRET CONFINEMENT.

Secret confinement of a person without movement of the person may supply an alternative to the asportation element necessary for conviction for kidnapping, and failure of a trial court to instruct a jury regarding secret confinement and instead relying on an instruction regarding asportation does not constitute grounds for reversal on appeal even though the defendant is charged with secretly confining the victim absent an objection to the instruction during trial.

5. KIDNAPPING — PROSECUTING ATTORNEYS.

A prosecuting attorney, in a prosecution for kidnapping, may argue all the alternative circumstantial bases upon which the jury can return a verdict of guilty.

6. APPEAL — CRIMINAL LAW — JURY INSTRUCTIONS — WITNESSES.

The number of witnesses presented by either side in a criminal action is irrelevant to a determination of truth; however, absent manifest injustice, an instruction to the contrary will not provide the basis for reversal on appeal where no objection was raised during trial.

7. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES — FAIR NOTICE.

A trial judge may instruct the jury against a defendant's wishes on a lesser included offense where evidence is adduced during trial which would warrant conviction of the lesser offense and the defendant has been afforded fair notice of the lesser included offense by the language of the charging document.

8. SEARCHES AND SEIZURES — STANDING — MONITORED CONVERSATIONS.

Admission of testimony of police officers regarding a monitored conversation between a defendant and another police officer who was equipped with a radio transmitter does not constitute error requiring reversal, the absence of a valid search warrant notwithstanding, where the defendant has no standing to challenge the monitoring and exigent circumstances would justify a search and seizure without a warrant.

9. PROSECUTING ATTORNEYS — DISCLOSURE OF EVIDENCE.

A prosecuting attorney must disclose all material evidence which may be favorable to an accused even where the evidence might lead a jury to entertain a reasonable doubt regarding the accused's guilt.

10. PROSECUTING ATTORNEYS — APPEAL.

A prosecuting attorney may not inflame the prejudices of a jury by resort to civic duty arguments; however, he need not phrase his argument in the blandest of all possible terms; each case must stand on its own facts, and where an argument is based on the evidence, even though it comes dangerously close to a civic duty argument, it may be justified on appeal.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Wesley J. Nykamp,* Prosecuting Attorney, and *Gregory J. Babbitt* and *Toni A. McAlhany,* Assistants Prosecuting Attorney, for the people.

*Allen N. Davey,* for defendants on appeal.

Before: R. B. BURNS, P.J., and ALLEN and T. GILLESPIE,* JJ.

T. GILLESPIE, J. This case is one involving a complicated set of facts which were developed over five weeks of trial in the circuit court.

To summarize the case, it appears that a Michigan State Police officer was assigned to make undercover narcotics purchases and was introduced by his superior officer, Sergeant William Morris, to a narcotics informant identified as John T. on October 19, 1976. The next day, John T. accompanied the trooper, who was given the street name of J. P., to a place known as Cheyenne Ranch in Ottawa County, Michigan. Their purpose was to meet James Atherton, a purported narcotics supplier. Atherton was not at the ranch so they went to Atherton's place of employment, a shop on

---

* Circuit judge, sitting on the Court of Appeals by assignment.

28th Street in Wyoming known as the Forty
Winks Shop. There they found Atherton, and the
three of them repaired to a nearby restaurant
where they discussed narcotics sales. trooper J. P.
let it be known that he would be interested in
purchasing narcotics and gave Atherton a phone
number where he could be reached. The next day,
the trooper took John T. to Detroit and left him at
a run-down hotel in the inner city.

To understand the story, it is necessary to
change the scene to Sterling Heights, Michigan,
and the home of Samuel Taormina, a jeweler. On
October 25, 1976, two men, one armed with a
sawed-off shotgun, entered Taormina's home and
robbed him of $30,000 in cash and a large amount
of jewelry. After the robbery, the two men tied up
Taormina and a girl living in the home and fled in
a white car. During the robbery, Taormina recog-
nized John T. as one of the robbers. He had been
introduced to John T. earlier by a mutual acquain-
tance, a girl by the name of Krissy. During the
robbery, Taormina heard John T. call his assistant
"J. P." By utilizing his connections with Krissy
and others, Taormina discovered that John T.,
accompanied by a man known as J. P., had been
attempting to acquire drugs from James Atherton
in the Grand Rapids area. Taormina enlisted the
defendants, Gerald and Phillip Phillips, and drove
to Atherton's Cheyenne Ranch. Apparently, the
parties, Taormina, the Phillips brothers, and Ath-
erton, were unknown to each other, and the only
connection was their mutual acquaintance with
Krissy.

Taormina, however, was successful in getting
Atherton's assistance in attempting to lure J. P. to
the Cheyenne Ranch. At 3:40 a.m. on October 29,
Atherton called J. P. and told him that some peo-

ple were in from Detroit and were ready to do business. J. P. refused to do business because of the lateness of the hour. After several calls, J. P. told Atherton he would meet them at 11 a.m. at the Forty Winks store. At 10:15 a.m., Atherton called to say that his people were still around and would meet J. P. at Farmer John's Restaurant, from which Atherton was calling. J. P. then called his supervisor, Sergeant Morris, who provided him with money and equipped him with an audio transmitter. Sergeant Morris quickly recruited a back-up surveillance team of detectives from nearby cities. J. P. went to Farmer John's and there met Atherton and defendant Gerald Phillips, who was introduced as "Tim". Atherton was dispatched to the ranch to get a "sample". After he left, Gerald Phillips and J. P. discussed the materials, and J. P. told Phillips that he was not interested in marijuana but wanted cocaine or heroin. Phillips responded that he only had an ounce. Phillips then suggested that they go out to the ranch and save Atherton the trip back. J. P. agreed. On the way to the ranch, they met Atherton coming back to the restaurant. J. P. pulled over, but Phillips told him to drive on and directed him into an area near the bunkhouse. Atherton, Taormina, and Phillip Phillips pulled in behind. At that time, Gerald Phillips pointed a .38-caliber revolver at J. P. and pulled the keys out of the car. J. P. told Phillips that if he wanted his money to take it, but "just don't shoot me". Phillips responded by saying, "It's not the money we want, it's you." J. P. was then asked, "Where is John T.?" Atherton said, "Don't want, it's you." J. P. was then asked, "Where is John T.?" Atherton said, "Don't shoot him here, there is too many people around." Taormina ordered J. P. to get into the "black ride", meaning a black Cadillac parked

nearby. Atherton told Gerald Phillips, "Give me the keys. I'll take care of the car." J. P. was shoved on his back into the front of the Cadillac. When Gerald Phillips looked away, J. P. reached for his gun, which was located in a belt at the small of his back. As he reached for the gun, his elbow caught in the back of the seat. Gerald Phillips saw what he was doing and put his gun to J. P.'s head saying, "Let go, or you are dead." J. P. said, "Okay, take the gun. Just don't shoot."

Taormina then asked for J. P.'s other gun, saying he knew that he had a sawed-off shotgun. J. P. denied having a shotgun, whereupon Taormina replied, "Okay, we will just take him out and blow his head off." Gerald Phillips commented, "Let's get it over with." J. P. was forced into the back seat; Taormina drove. Phillip Phillips rode up front, and Gerald Phillips got into the back seat. As the car came to the end of the drive to the ranch and slowed for traffic at the highway, Sergeant Morris, who had heard much of the conversation from the trooper's audio transmitter, pulled up with three other officers. J. P. pushed Gerald Phillips' gun from his side, locking his hand in a position so that the hammer could not be raised. Phillips squeezed the trigger, but it could not fire. Finally, a detective came to his assistance, and J. P. got control of the gun. Taormina, Gerald Phillips, and Phillip Phillips were arrested, and Atherton was arrested at the bunkhouse.

Gerald Phillips and Phillip Phillips, along with Taormina, were tried for conspiracy to commit murder, MCL 750.316; MSA 28.548, and kidnapping, MCL 750.349; MSA 28.581. After a jury trial, defendants were acquitted of conspiracy but were found guilty of kidnapping.

Defendant Phillip Phillips was sentenced to

serve from 10 to 40 years, and defendant Gerald Phillips was sentenced to serve from 20 to 40 years. From these sentences, they appeal as of right.

On appeal, the initial appellate counsel raised four issues. The defendants terminated the representation by that appellate counsel and replacement counsel petitioned this Court to supplement the issues. The Court allowed the supplement.

The defendants raise many issues and objections to support a claim of unfairness during the trial, many of which go to the instructions of the trial judge to the jury.

It is the responsibility of the reviewing court to determine whether the defendants received a fair trial. The charge to the jury must be considered in its entirety, and where exceptions are taken to extracts which are taken from the context of the instructions, which are not strictly correct but the Court can see that the jury could not have been misled by it, a new trial will not be granted. *People v Wright,* 408 Mich 1; 289 NW2d 1 (1980), *People v Dupie,* 395 Mich 483; 236 NW2d 494 (1975), *People v Dye,* 356 Mich 271; 96 NW2d 788 (1959).

In defending this case, the defendants admitted most of the facts testified to by the State Police trooper but justified their actions by claiming that they were making a citizen's arrest.

The reasoning is that MCL 764.16; MSA 28.875 provides that a private person may make an arrest without a warrant:

(a) for a felony committed in his presence;

(b) when the person to be arrested has committed a felony, although not in his presence.

The logic continues that Taormina was robbed on October 25, 1976, and, therefore, knew that a

felony had taken place and had reason to believe that J. P. was one of the persons who robbed him and that the defendants, in assisting Taormina, were entitled to the same rights which he might have to make a citizen's arrest, even if he were in error as to identification of the suspect. The trial judge, in instructing the jury as to citizen's arrest as legal justification for kidnapping, had stated:

"A private person must know for sure that a felony has been committed and that the person to be arrested has committed the felony before making the arrest."

The defendants argue that this instruction would require the jury to find them guilty of kidnapping unless the person whom they were arresting were actually guilty. Overlooked in this argument is the total instruction, which covered specific intent in the form required by CJI 3:1:16 and which ended with the following statement: "If, from all the evidence, you have a reasonable doubt as to whether or not the defendants knowingly and consciously acted with intent to kidnap, then you must find the defendants not guilty of kidnapping."

The citizen's arrest defense did not square with:

(a) Taormina's failure to report the robbery to the police prior to this incident;

(b) the use of a gun by the defendants;

(c) statements such as "Okay, we will just take him out and blow his head off" and "Let's get it over with";

(d) the attempt by Gerald Phillips to fire the revolver into J. P.'s head when the surveillance team arrived yelling, "Police! Police!";

(e) the failure to inform the trooper of the cause of his arrest and the intention to arrest him and

turn him over to the police as required by MCL 764.20; MSA 28.879.

In the light of the absence of any evidence of a citizen's arrest other than defendants' claim during trial and the totality of the judge's instructions, it is understandable that the jury would conclude that the scene at the Cheyenne Ranch was not an attempt to make a citizen's arrest, and the deficient instruction as to the elements of citizen's arrest was harmless error. *Chapman v California,* 386 US 18, 21; 87 S Ct 824; 17 L Ed 2d 705 (1967).

Several objections were raised to instructions which correctly stated the law on the legal justification for citizen's arrest. The court instructed the jury that the law requires a prior warning and notification and that a failure to comply with the statute, MCL 764.20; MSA 28.879, would defeat a claim of legal justification. The court also instructed the jury that an arrest using unlawful force would defeat a claim of legal justification. *People v McCord,* 76 Mich 200, 206; 42 NW 1106 (1889).

The trial judge instructed the jury that an arrest for any purpose other than to bring the felon before a court or law enforcement officials is not legally justified. This is a requirement of MCL 764.26; MSA 28.885.

The defendants argue that such instructions impaired their claims of legal justification for a citizen's arrest and were therefore erroneous. These instructions are, however, supported by the law. The instructions might impair the defense of legal justification for their acts, but, of greater importance, the court's instructions conveyed to the jury that, in the crime of kidnapping, specific intent is an element, and the jury understood that

the crime of kidnapping could not have been committed if the jury believed that the defendants intended only a citizen's arrest. These instructions pointed out the requirements for legal justification which, if proven, would negate kidnapping and did not remove from the jury a requirement to find specific intent to kidnap in order to convict. *People v Holcomb,* 395 Mich 326, 332-334; 235 NW2d 343 (1975).

Another claim made by defendants is that the trial court erred when it instructed the jury that the asportation element of kidnapping could not be incidental to a *lesser,* underlying crime. Defendants assert that the court should have included an instruction that the asportation could not be incidental to a coequal offense.

Although we agree with defendants' general position on this issue, *People v Barker,* 411 Mich 291, 301-302; 307 NW2d 61 (1981), the asportation of the complainant, in this case, as a matter of law, could not be incidental to the only coequal crime, which was conspiracy to commit murder.

Conspiracy consists of the intent to commit an illegal act and the intent to enter into an agreement with another to commit that act. *People v Missouri,* 100 Mich App 310, 340; 299 NW2d 346 (1980), *People v Turner (On Remand),* 100 Mich App 214, 216; 299 NW2d 721 (1980). There is no asportation element, legally or factually, to a conspiracy. Therefore, the failure to instruct the jury that defendants could not be convicted of kidnapping if the asportation was incidental to the conspiracy charge simply was not error.

Defendants further claim that the trial court's failure to instruct on the element of "secret confinement" was error since that was the crime charged in the information. The information

charged that defendants "willfully, maliciously and without lawful authority, through use of a dangerous firearm forcibly seized [complainant] to murder or to secretly confine him * * *". The trial court did not give an instruction on "secret confinement". Instead, it relied upon "asportation". Compare CJI 19:1:01 with CJI 19:1:02. It would appear that "secret confinement" can be the alternative to "asportation". *People v Adams,* 389 Mich 222, 238; 205 NW2d 415 (1973), *People v Pacely,* 51 Mich App 67, 74; 214 NW2d 561 (1974). The trial court's instruction did not draw an objection from defendants at trial, which negates their claim that their defense was predicated upon secret confinement. To further substantiate that defendants were not relying upon secret confinement, defendants continually requested an instruction that asportation could not be incidental to the conspiracy charge. Finally, "[t]he fact that a defendant abducts a victim under circumstances which satisfy more than one of the alternative definitions of [the kidnapping statute] does not preclude a prosecutor * * * from arguing all of the alternative circumstantial bases upon which a jury can return a verdict of guilty or not guilty * * *". *People v Bergevin,* 406 Mich 307, 312; 279 NW2d 528 (1979).

Defendants next argue that error occurred requiring reversal when the trial judge instructed the jury that "in weighing all the evidence as to a fact it is proper to consider the number of witnesses testifying on one side or the other as to that fact * * *". Defendants did not object to this instruction. Their failure to do so precludes reversal, absent manifest injustice. *People v Hammack,* 63 Mich App 87; 234 NW2d 415 (1975). We find no manifest injustice here. We do not, however, approve of this instruction. The number of witnesses

which a party garners is quite irrelevant in determining where the truth lies. *People v Hagle,* 67 Mich App 608, 617; 242 NW2d 27 (1976).

The proper instruction is: "You should not decide this case on the basis of which side presented the greater number of witnesses. You have the obligation to decide the believability of all witnesses and evidence, and whether the believed testimony and evidence proves guilt beyond a reasonable doubt." CJI 5:1:02.

We find no merit to defendants' claim that the trial court cannot give an instruction to the jury on a cognate lesser included offense (felonious assault) against their wishes. *People v Chamblis,* 395 Mich 408, 418; 236 NW2d 473 (1975), *People v Ora Jones,* 395 Mich 379, 388; 236 NW2d 461 (1975), *People v Robinson,* 101 Mich App 687, 694; 301 NW2d 41 (1980).

Another issue raised by defendants, Gerald and Phillip Phillips, is that the court, after argument on a motion *in limine* to exclude references to prior convictions of felonies, decided to allow evidence of four felonies to be used for the impeachment of Gerald Phillips. These were a 1962 conviction of assault with intent to rob, a 1966 conviction for attempted breaking and entering, a 1966 narcotics conviction, and a 1974 conviction for conspiracy to manufacture a controlled substance. As to Phillip Phillips, the court determined that evidence of a 1965 conviction for carrying a concealed weapon and a 1971 conviction for use of heroin could be admitted.

This trial was held in 1977, prior to adoption of MRE 609, and was, therefore, controlled by the rules of *People v Jackson,* 391 Mich 323, 333; 217 NW2d 22 (1974). The rules of *Jackson* were amplified and clarified by *People v Baldwin,* 405 Mich

550; 275 NW2d 253 (1979), and *People v Jones,* 92 Mich App 100; 284 NW2d 501 (1979). However, both *Baldwin* and *Jones* were decided after this trial, and MRE 609 also was adopted after this trial was completed. The judge's ruling was erroneous. Some of the convictions were stale, and the charge of assault with intent to rob against Gerald Phillips and the concealed weapons charge against Phillip Phillips were similar enough to the crime charged in this case so as to be inadmissible. However, it does not appear that the prosecutor asked Phillip Phillips about his former record, and the jury was unaware of it. Gerald Phillips' record was partially revealed by the defense counsel. Both defendants took the stand and testified in their own behalf, and we must conclude that the court's ruling was not reflected in the outcome of the trial.

Defendants claim that the admission by the court of testimony of the officers who heard the conversation between the defendants and trooper J. P. over the transmitter with which the trooper was equipped constituted error requiring reversal. It is agreed that no search warrant was obtained, and defendants claim that the conversation should have been suppressed under the authority of *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), *cert den* 423 US 878; 96 S Ct 152; 46 L Ed 2d 111 (1975).

This case can be distinguished from *Beavers* on several grounds. The monitoring in *Beavers* took place in the defendant's home. This fact was emphasized twice in *Beavers. Id.,* 563, 565-566. This monitoring was of words spoken in the victim's automobile in a barnyard and in a car not owned by these defendants. The purpose of the rule set out in *Beavers* was to protect persons engaged in

private conversation from being surreptitiously overheard. In this case, it was not a private conversation that was overheard, but rather the entreaties of a man desperately pleading for his life. An argument extending the warrant requirement to the facts of this case would stretch credulity. *People v Dubose,* 91 Mich App 633; 283 NW2d 644 (1977).

Indeed, no standing existed for the defendants to claim a right of privacy as they were not in a place owned or occupied by them. *People v Kramer,* 108 Mich App 240, 247; 310 NW2d 347 (1981).

The state trooper was given 45 minutes by Atherton to meet with him. The location of Farmer John's Restaurant was 35 driving minutes distance from the prosecutor's office and the district court. This created a sufficient exigent circumstance to justify the "search and seizure" without a warrant. *Dubose, supra, People v Pulley,* 66 Mich App 321, 328-329; 239 NW2d 366 (1976).

Defendants charge a variety of unethical conduct on the part of the prosecution which allegedly prevented the defendants from receiving a fair trial.

Most of these charges stem from a failure of the prosecution to have John T., the informant, present during trial and to inform defense attorneys prior to trial that John T. had confessed to Sgt. Morris regarding his participation in the Taormina robbery. We must be critical of the prosecutor in his dilatory tactics in making the defense aware of John T.'s involvement. It is true that John T. was not present at the time of the incident at Cheyenne Ranch, which was the basis for the kidnap charge, and was not, therefore, a res gestae witness. Still, his testimony would have simplified

the proofs of the Taormina robbery, which was the foundation for defendants' defense of citizen's arrest and intent to recover Taormina's stolen property. It is still the obligation of the prosecutor not to suppress evidence which might lead the jury to entertain a reasonable doubt about a defendant's guilt. *People v Florinchi,* 84 Mich App 128, 134; 269 NW2d 500 (1978), *People v Walton,* 71 Mich App 478; 247 NW2d 378 (1976).

In this case, however, the jury fully understood, after five weeks of trial, that Taormina had been robbed, that he knew that John T. was the criminal, and that he had grounds to suspect J. P., so that the defendants had full benefit of the information at trial.

The defendants likewise complain of the following closing argument on the part of the prosecutor:

"If someone robs us or takes our property and we chase them down the street and suddenly grab them and pull our property back and they might even get hurt in the process, we have a right to do that because we have a right to immediately pursue our property because there has not then been time to bring the law involved but we cannot become a law unto ourselves we cannot become vigilantes and start trying to vindicate these criminal actions on our own because if we do that we are no longer a society of law, we become merely a society of men and then the legal structure that you are sitting hereon becomes superfluous. If we live in that kind of society there is no reason for you, as jurors, to be sitting in this courtroom for five weeks or more, absolutely none because then they can go out and do what they want to do, to take vindication or revenge because of a crime without going to court."

This argument is close indeed to a "civic duty" argument which is forbidden, *People v Wright (On Remand),* 99 Mich App 801, 808-811; 298 NW2d

857 (1980), and it is extremely troubling. If the statement is read as an urging to find every person attempting a citizen's arrest guilty of kidnapping, then it is highly objectionable. If, on the other hand, it was argument on the evidence in this case, it is dangerous but does not require reversal. This Court has approved hard language when it was supported by the evidence:

"Of course, a prosecutor must avoid inflaming the prejudices of a jury, but there is no requirement that he phrase his argument in the blandest of all possible terms. The prosecutor is, after all, an advocate and he has not only the right but the duty to vigorously argue the people's case." *People v Cowell,* 44 Mich App 623, 628-629; 205 NW2d 600 (1973). See also *People v Sesson,* 45 Mich App 288, 296; 206 NW2d 495 (1973).

Each case stands on its own facts, and based on the facts in this case such argument could be justified. *People v Heath,* 80 Mich App 185; 263 NW2d 58 (1977).

A review of this case in its totality leads us to the conclusion that the defendants did receive a fair trial. They had access to an unusual amount of the prosecution's evidence and presented their defense fully over a period of five weeks.

The principle question was the question of defendants' intent. Were they making a citizen's arrest or did they have a more nefarious intent in taking trooper J. P. at gun point from the Cheyenne Ranch? This was the question for the jury. The jury decided that there was reasonable doubt that there was a conspiracy to commit murder and thus acquitted the defendants. The same jury unanimously concluded that the defendants had the specific intent to kidnap.

The remaining issues raised by the defendants need not be discussed as we find them to be without merit.

Affirmed.