*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
April 22, 2021

v

No. 350799
Missaukee Circuit Court
LC No. 2019-003016-FH

JASON LOY VANNORTRICK,

        Defendant-Appellant.

Before: MURRAY, C.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of felonious assault, MCL 750.82, reckless driving, MCL 257.626, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, five counts of fourth-degree child abuse, MCL 750.136b(7), and felonious impersonation of a peace officer, MCL 750.215(3). The trial court sentenced defendant to serve 13 to 48 months' imprisonment for each assault conviction, 93 days' imprisonment for the reckless driving conviction, 24 months' imprisonment for the felony-firearm conviction, 365 days' imprisonment for each child abuse conviction, and 365 days' imprisonment for the impersonating a peace officer conviction. The sentences are to be served concurrently, except that the concurrent felonious assault sentences are to be served consecutively to the felony-firearm sentence. We hold that the evidence was insufficient to convict defendant of felonious impersonation of a peace officer, and remand this case to the trial court with instructions to enter in its place a conviction of misdemeanor impersonation of a peace officer, and to resentence defendant accordingly. We otherwise affirm defendant's convictions and sentences.

## I. FACTS

At about 5:00 p.m. on April 19, 2019, Dale Howard was driving his pickup truck in Missaukee County with his wife and youngest daughter when he passed defendant's vehicle in a manner that defendant considered unsafe. Defendant was driving a white minivan, with his 14-year-old daughter in the front passenger seat and his four young sons in the back. Defendant chased the truck, waving a badge in an attempt to pull Howard over so that he could issue Howard a verbal warning about his driving. Several years earlier, the badge had been issued to defendant

-1-

when he served as an auxiliary police officer with the Manton Police Department. It is uncontested that defendant's badge was long expired, had never been valid in Missaukee County, and even when in effect, had conferred no independent police authority in the issuing jurisdiction or elsewhere.

During the chase, defendant's daughter saw the speedometer hit 95 miles per hour at times as Howard and defendant passed each other and other drivers. Defendant's daughter also stated that defendant was driving closer than normal to the truck and that she feared there would be a collision. Howard, his wife, and his daughter each testified that defendant drove much too close to their truck. All three of the Howards and defendant's daughter also testified that defendant once passed the Howards, slammed on his brakes, and then pointed a large, black handgun out the window at the Howards or their truck as they swerved into the other lane to get away from him. Howard and his daughter were in fear of being shot, and Howard's daughter called 911 immediately. Defendant's daughter saw defendant point the gun, and asked if he planned to shoot out the truck's tires. Defendant himself testified that his gun was only briefly visible because it was poking him in his right side, so he tried to move it to a door compartment on his left before realizing that compartment was full and he needed to return the gun to its holster.

Howard stopped at a red light because traffic was such that he could not safely continue. Defendant stopped behind him and exited his vehicle, leaving his children in the van in the lane of traffic. Howard turned left and jumped the curb into a parking lot, and defendant followed on foot. Howard did not drive away again because he saw that defendant's gun was holstered. The police arrived shortly thereafter. The responding officer took defendant's badge, weapon (with eight rounds in its magazine), and identification card, which were later admitted as exhibits at trial.

At trial, defendant moved for a directed verdict at the close of the prosecution's proofs. The trial court denied the motion. The jury found defendant guilty on all charges. This appeal followed.

## II. PROSECUTOR'S PRIOR REPRESENTATION OF DEFENDANT'S EX-WIFE

Defendant argues that his due process rights were violated when the prosecutor failed to inform the trial court that he had represented defendant's ex-wife in a child abuse and neglect case as her court-appointed counsel before he was appointed to his current position. The abuse-and-neglect proceeding ended with defendant gaining custody of their five children. Defendant suggests that the prosecutor's personal animus and his duty of loyalty to defendant's ex-wife motivated the prosecutor to refrain from plea-bargaining the mandatory two-year felony-firearm charge to undo the prior custody order in his favor. We disagree.

Initially, we note that defendant first raised this issue six months after his trial in a motion for a new trial. During the hearing on the motion, appellate counsel admitted that defendant informed trial counsel of this alleged conflict and trial counsel discussed it with the prosecutor. Appellate counsel even explained that trial counsel had strategically opted to continue the proceedings with this prosecutor and that appellate counsel opined that he could not establish trial counsel's strategic decision constituted ineffective assistance of counsel. Even so, appellate counsel argued that the prosecutor should have independently informed the trial court of the

circumstances surrounding this alleged conflict rather than making the decision that he could proceed.[1]

Allowing defendant to proceed with his claim on these facts would contravene the long-standing rule against harboring error as an appellate parachute. *People v Pipes*, 475 Mich 267, 278 n 39; 715 NW2d 290 (2006). Cf. *People v Cocuzza*, 413 Mich 78, 83-84; 318 NW2d 465 (1982) ("We will not reward the [defendant's] failure to move for [judicial] disqualification, with assertion of the basis reserved for appellate purposes, by sanctioning a reversal of the defendant's conviction."). And we see no reason not to apply this rule here. See also *In re Osborne*, 459 Mich 360; 589 NW2d 763 (1999) (explaining that "[t]iming does matter" and that a disqualifying conflict-of-interest for a prosecutor untimely noticed "may have quite a different remedy, or no remedy at all, if noticed at a later stage of the proceedings."). But, because the trial court ruled on defendant's motion and the prosecutor would have had the responsibility to resolve any conflict of interest, we will address defendant's substantive claims for the sake of completeness.

The United States Supreme Court has suggested that due process may preclude prosecution by a prosecuting attorney acting under a conflict of interest. *Marshall v Jericho, Inc*, 446 US 238, 249; 100 S Ct 1610; 64 L Ed 2d 182 (1980) (citation omitted) ("We do not suggest . . . that the Due Process Clause imposes no limits on the partisanship of administrative prosecutors. Prosecutors are also public officials; they too must serve the public interest. In appropriate circumstances the Court has made clear that the traditions of prosecutorial discretion do not immunize from judicial scrutiny cases in which the enforcement decisions of an administrator were motivated by improper factors or were otherwise contrary to law."). While the exact parameters remain unclear, the Supreme Court has made clear that "injecting personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Id*. at 249-250.

In Michigan, we have treated a prosecutor's failure to recognize a disqualifying conflict as a claim of prosecutorial misconduct. *People v Pfaffle*, 246 Mich App 282, 287-288; 632 NW2d 162 (2001). And, because defendant failed to preserve this claim "at trial, our review is for plain error that affected his substantial rights." *Id*. Resultantly, defendant is not entitled to relief unless the error is " 'clear or obvious' " and affected his substantial rights by causing prejudice to his case. *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 67 (2015), quoting *People v Carines*, 460 Mich 750, 752-753, 764; 597 NW2d 130 (1999). Even where a plain error occurred, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." *Id*. at 763-764 (citation and quotation marks omitted; second alteration in original).

When preserved, this Court reviews the trial court's decision regarding a defendant's motion to disqualify a prosecutor for an abuse of discretion. *People v Petri*, 279 Mich App 407,

---

[1] MCL 49.160(1) provides for the appointment of a special prosecutor in the event that the county prosecutor "determines himself . . . to be disqualified by reason of conflict of interest or . . . otherwise unable to attend to the duties of the office," by filing a petition with the Attorney General.

417; 760 NW2d 882 (2008). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *Id*. at 421. "[T]he determination whether a conflict of interest exists sufficient to require disqualification of the prosecuting attorney is a question of fact that is reviewed on appeal for clear error." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

"Cases discussing disqualification of prosecutors fall into two main subject categories." *People v Doyle*, 159 Mich App 632, 641; 406 NW2d 893 (1987). "The first category involves disqualification for a conflict of interest arising out of some professional, attorney-client relationship, as when the defendant is a former client of the prosecuting attorney." *Id*. "The prior existence of an attorney-client relationship raises typical privilege and conflict of interest questions." *Id*. "Cases in this category discuss whether the prosecuting attorney became privy to confidential information which he may not ethically use against the defendant and whether such information may be imputed to other members of the prosecuting attorney's office." *Id*. The second category involves "situations where the prosecuting attorney has a personal interest (financial or emotional) in the litigation, or has some personal relationship (kinship, friendship or animosity) with the accused." *Id*. at 641-642.

Although *Doyle* included a discussion regarding the appearance-of-impropriety standard, that discussion was rooted in Canon 9 of the former Michigan Code of Professional Responsibility (MRPC). *Id*. at 642-646. And that standard has been superseded as explained in the Comment to MRPC 1.9:

> The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety proscribed in Canon 9 of the former Michigan Code of Professional Responsibility. Two problems can arise under this rubric. First, the appearance of impropriety might be understood to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" begs the question. Thus, the problem of imputed disqualification cannot readily be resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety. A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidentiality and avoiding positions adverse to a client.

At the hearing on defendant's motion, the prosecutor explained that in the earlier abuse-and-neglect matter, defendant had pleaded to the court's jurisdiction, while defendant's ex-wife opted for an adjudicative trial, which proved unsuccessful. Thereafter, the prosecutor was not involved in the abuse-and-neglect matter and he had no knowledge of the current custody arrangement. Those proceedings occurred roughly a year before the criminal trial. Moreover, the prosecutor had never represented defendant, and, therefore, had no attorney-client relationship with him. As to the instant criminal matter, there had been plea negotiations, but they were

unsuccessful.  Moreover, during the hearing, appellate counsel candidly conceded that the prosecutor had no duty to offer him a plea at all.[2]

Given the parties' positions, the trial court determined that there was no conflict of interest and no reason to disqualify the prosecutor.  We agree.

Defendant, however, contends that the prosecutor violated MRPC 1.7(b), which states:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation.  When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

But this rule is inapplicable because it governs conflicts of interest between *current* clients.  Compare MRPC 1.9 (Conflict of Interest: Former Client) and MRPC 1.11 (Successive Government and Private Employment).  In any event, MRPC 1.7 clearly applies to the representation of a client during which that representation may be limited by the lawyer's duty to another client or a third person.  The prosecutor represented the people of Michigan in this case, not defendant.  Defendant does not allege that the prosecutor represented him or otherwise was under any duty to him.  To circumvent the obvious conclusion that this rule was not applicable in this case, defendant quotes from the comments to MRPC 1.7 as follows:  "But the duty of loyalty owed to a current client is 'also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action' because of a conflict of interests."  Defendant argues that the prosecutor violated his duty to the people of Michigan to administer justice, of which plea bargaining is an essential component, when he failed to offer defendant a plea bargain that would avoid incarceration because a prison term for defendant would directly benefit the prosecutor's former client, defendant's ex-wife.  Defendant insists that such a plea bargain necessarily would have included dismissal of the felony-firearm charge and defendant's exposure to its mandatory two-year sentence.  But defendant admits that another prosecutor might have made the same decision, and, indeed, had no duty to offer a plea bargain at all.  See *Weatherford v Bursey*, 429 US 545, 561; 97 S Ct 837; 51 L Ed 2d 30 (1977).  Moreover, defendant does not argue that the felony-firearm charge was unsupported by probable cause, but simply asserts that the prosecutor failed to make that offer because it would benefit his former client to have defendant jailed.

---

[2] *Weatherford v Bursey*, 429 US 545, 561; 97 S Ct 837; 51 L Ed 2d 30 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.").

Defendant offers no factual support to establish that it was the prosecutor's intent to aid defendant's ex-wife by ensuring that defendant would be incarcerated, only speculation. There is no proof that the prosecutor even knew who was awarded custody of the children. To the contrary, the prosecutor told the trial court that his representation of defendant's ex-wife ended after the jurisdictional phase of the proceeding, and that he did not know the custodial situation that resulted from that abuse-and-neglect case. Additionally, defendant's implication that his ex-wife would gain custody of the children if he were imprisoned is itself speculative. Defendant's ex-wife lost custody in the first proceeding, during a phase in which the prosecutor was not involved, for reasons defendant does not explain. There is no evidence that the prosecutor knew that defendant's ex-wife had lost custody, that he was aware of the evidence on which that decision was based, or that he knew of changes in the ex-wife's circumstances in the interim such that returning custody to her would be a viable option for the family court. This lack of factual support is also fatal to defendant's allegations that the prosecutor violated ABA Standards for Criminal Justice, Standard 3-1.7(c) (prosecutors should not participate in a matter in which they personally and substantially participated as a non-prosecutor), and 3-1.7(f) (prosecutors should not allow their professional judgment to be affected by other relationships).

Defendant has failed to establish that the prosecutor had any conflict of interest, that disqualification was required, and has otherwise failed to support, either factually or legally, his bare assertion that the prosecutor's failure to recuse himself undermined defendant's due-process rights. Accordingly, defendant has not met his burden to establish a clear or obvious error that affected his substantial rights.

## III. SUFFICIENCY OF EVIDENCE

Next, defendant argues that the evidence was insufficient to sustain his convictions of reckless driving, child abuse, felonious impersonation of a peace officer, assault with a dangerous weapon, and felony-firearm. We disagree in all respects except one; the evidence was insufficient to prove beyond a reasonable doubt that defendant impersonated a peace officer "to commit a crime," which is a felony, but the evidence was sufficient to establish misdemeanor impersonation of a peace officer.

A challenge to the sufficiency of evidence implicates the defendant's due-process rights. *People v Carll*, 322 Mich App 690, 694 n 1; 915 NW2d 387 (2018). We review such a challenge de novo, examining the evidence in the light most favorable to the prosecution to determine whether a rational juror could have concluded that the prosecution proved each element of the crime beyond a reasonable doubt. *People v Clark*, 330 Mich App 392, 436; 948 NW2d 604 (2019). While this Court's review of the evidence is de novo, it is also deferential, in that "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id.* (quotation marks and citation omitted). This Court does not substitute its judgment for that of the jury regarding the witness's credibility or how much weight to give the evidence. *Carll*, 322 Mich App at 696. Where the evidence conflicts, this Court resolves the conflict in the prosecution's favor. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

## A. RECKLESS DRIVING

"[A] person who operates a vehicle upon a highway . . . in willful or wanton disregard for the safety of persons or property" has committed reckless driving. MCL 257.626(2). To establish willful or wanton disregard, more than ordinary negligence or carelessness is required, but proof of an intent to cause harm is not necessary. *Carll*, 322 Mich App at 695. Rather, willful or wanton disregard "means knowingly disregarding the possible risks to the safety of people or property." *Id*.

Considerable evidence was presented to establish that defendant drove in a way that willfully or wantonly disregarded the risk of serious injury to his own five children, as well as to occupants of other vehicles. Defendant himself admitted that he chased Dale Howard's pickup truck after Howard passed his minivan in what he considered to be an unsafe manner. All three Howards testified that defendant drove much too close to their rear bumper, and defendant's daughter confirmed that it was at least closer than normal. Howard testified that he drove as fast as 70 m.p.h. during the chase, and defendant admitted that he drove 70 to 72 m.p.h., where the speed limit was 55 m.p.h., but defendant's daughter testified that the speedometer read between 75 and 95 m.p.h. during the chase. Defendant admitted that he passed some vehicles during the approximately five-mile chase; Howard's wife confirmed that they passed at least three other cars; defendant's daughter stated that there was "a bunch" of cars on the road. Howard also testified that defendant passed him in a no-passing zone, then braked abruptly, forcing Howard to swerve into the other lane, and both Howard and his daughter testified that they saw defendant aiming the handgun at them or their truck as they drove around him at that time.

Defendant admitted that he had his gun high enough for a time that the occupants of the truck could see it. Although defendant maintained that he was merely attempting to move the gun because it was pinching his side, Howard's daughter thought defendant was aiming at the left rear tire, near where she was sitting at the time, and defendant's daughter reported that this was her perception as well. All of the Howards testified that they were either in fear of being shot or being involved in a car accident. Defendant's daughter was also in fear of an accident, and asked defendant if he was going to shoot Howard's tires. Howard and his wife, as well as defendant's daughter, testified that defendant left the minivan sitting in traffic to go talk to Howard after he stopped at a traffic light, and defendant did not deny doing so. The gun, which defendant admitted belonged to him, was placed into evidence along with its loaded magazine, and Howard, his daughter, and defendant's daughter all accurately described the gun they saw.

Again, for reviewing the sufficiency of the evidence, we resolve conflicting testimony in the prosecution's favor. See *Kanaan*, 278 Mich App at 619. A jury could fairly conclude that defendant chased Howard's truck at 95 m.p.h. while passing other vehicles, passed Howard's truck in a no-passing zone, pointed a handgun at them as he braked so suddenly that Howard was forced to drive into the other lane, then left his children in his vehicle in an active lane of traffic, and that these actions were taken in wanton disregard for placing several others at risk of serious injury or death. Therefore, the evidence of reckless driving was sufficient to support defendant's conviction.

## B. CHILD ABUSE

Defendant argues that there was insufficient evidence to support his convictions of child abuse because there was insufficient evidence to support his conviction of reckless driving, given that child abuse cannot rest upon evidence of speeding alone. While we have concluded that there was sufficient evidence to support the reckless driving conviction, recklessness is not the standard for child abuse. We also reject defendant's premise that child abuse cannot be established by evidence of speeding alone, but further observe that the evidence in this case showed that defendant endangered his children by doing more than merely speeding.

MCL 750.136b provides, in relevant part:

> (7) A person is guilty of child abuse in the fourth degree if any of the following apply:
>
> (a) The person's omission or reckless act causes physical harm to a child.
>
> (b) The person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, regardless of whether physical harm results.

Subsection (a) does not apply because none of defendant's children were physically injured by his actions. But defendant admitted that he knowingly and intentionally chased Howard's pickup truck with the intention of forcing him to stop and receive a warning about how he had passed defendant's vehicle. The only question, therefore, is whether that chase posed an unreasonable risk of harm or injury to the children in defendant's minivan. MCL 750.136b(7)(b).

Chasing another vehicle at excessive speed on a public highway almost invariably poses an unreasonable risk of injury to any children who may be involved. In addition to the danger of an accident, violence can result from road rage. Speed of the chase aside, to put another driver in probable fear and anger, by chasing him and pointing a gun at him and his family, creates the risk that that other driver may resort to dangerous driving or return aggression. In any case, as just discussed defendant drove anywhere from 70 to 95 m.p.h., weaved in and out of traffic, tailgated the pickup truck, passed the truck in a no-passing zone, and braked abruptly, which could have all caused a high-speed accident. This evidence was sufficient to support defendant's convictions for fourth-degree child abuse as his admitted knowing and intentional acts placed his five children at unreasonable risk of harm or injury.

## C. IMPERSONATION OF PEACE OFFICER

Defendant admits that he impersonated a peace officer, but argues that the evidence was insufficient to support his felony conviction of that crime because he did not impersonate a peace officer for the purpose of committing the crime of assault with a dangerous weapon. We agree.

It is a misdemeanor for anyone who is not a peace officer[3] to "perform the duties of a peace officer," to represent himself to another as a peace officer "for any unlawful purpose," or to represent himself to another as a peace officer "with the intent to compel the person to do or refrain from doing any act against his or her will." MCL 750.215(1)(a) and (c), and (2). MCL 750.215(3), however, enhances such misrepresentation to a four-felony when

> [a]n individual, who in violation of subsection (1), performs the duties of a peace officer to commit or attempt to commit a crime or represents to another person that he or she is a peace officer to commit or attempt to commit a crime . . . .

The felony information states that defendant impersonated a peace officer by representing that he was a peace officer to commit or attempting to commit an assault with a dangerous weapon by pulling a gun on Howard while driving and showing Howard the badge.

The resolution of this issue rests on the meaning of the phrase "to commit a crime" in MCL 750.215(3). In interpreting statutes, the goal is "to give effect to the Legislature's intent . . . ." *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017) (quotation marks and citation omitted). In so doing, this Court "examine[s] the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme. When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id*. (quotation marks and citation omitted). This Court presumes that the Legislature knows "the rules of grammar." *People v Henderson*, 282 Mich App 307, 329; 765 NW2d 619 (2009).

Grammatically, "[t]o commit" is the infinitive form of a verb. See Garner, *Garner's Modern English Usage* (4th ed), p 853 ("An infinitive is the tenseless form of a verb preceded by *to*, such as *to dismiss* or *to modify*.") " '[T]o' plus the infinitive is equivalent to 'in order to' plus the infinitive or 'for the purpose of' plus the gerund form of the infinitive." *United States v O'Hara*, 143 F Supp2d 1039, 1041-1042 (ED Wis, 2001).[4] The Fifth Circuit Court of Appeals likewise employed this grammatical principle to determine the meaning of the term "fugitive from justice," which was defined as one who " 'has fled from any State *to avoid* prosecution . . . .' " *United States v Soza*, 874 F3d 884, 890, 893 (CA 5, 2017), quoting 18 USC 921(a)(15) (emphasis added). The appellate court explained that "the use of the word 'to' in the infinitive, 'to avoid,' . . . suggests purposeful action." *Soza*, 874 F3d at 892-893. The *Soza* Court also quoted the Merriam-Webster Collegiate Dictionary (11th ed, 2003), which defines the word "to" as " 'a function word to indicate purpose, intention, tendency, result, or end.' " *Id*. at 893 n 34.

In this case, the word "to" is also used in the infinitive, "to commit"; it also suggests purposeful action and "to" may be replaced with "in order to" commit. Accordingly, representing oneself to be a peace officer to commit a crime requires that the misrepresentation be made in

---

[3] "Peace officer" is defined in MCL 750.215(5), and plaintiff has not challenged this element on appeal.

[4] "Opinions of the lower federal courts . . . are not binding but may be considered persuasive." *People v Patton*, 325 Mich App 425, 434 n 1; 925 NW2d 901 (2018).

order to commit the crime or, stated otherwise, that committing a crime be the purpose of the misrepresentation. In this case, there is no evidence that defendant flashed his badge at Howard to threaten Howard and his daughter with the gun. Rather, the evidence established that defendant committed the misdemeanor offense of impersonating a peace officer by showing his badge to Howard in order to effectuate a traffic stop. See MCL 750.215(1) and (2). This conclusion is supported by the evidence that, when defendant finally succeeded in stopping the pickup truck and walked over to talk with Howard, defendant's weapon was holstered.

Because there was no evidence that the specified crime of felonious assault was the goal of the impersonation, we vacate defendant's conviction of felony impersonation of a peace officer, and instruct the trial court on remand to enter in its place a conviction of the lesser included offense of misdemeanor impersonation of a peace officer,[5] and to resentence defendant accordingly.

## D. FELONIOUS ASSAULT

Defendant argues that the trial court erred when it denied his motion for a directed verdict in connection with the charges of felonious assault, as well as the felony-firearm charge which was predicated on felonious assault. We disagree.

A trial court's decision denying a motion for a directed verdict is reviewed de novo, viewing the evidence in the light most favorable to the prosecution to determine whether the elements of the crime were established beyond a reasonable doubt. *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018).

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (quotation marks and citation omitted). Defendant contests only the third element, arguing that the evidence fails to establish intent because it merely suggests that defendant held a handgun that was directed toward the rear of the Howards' pickup truck.

Intent is rarely confessed or proved directly by a witness, but may be established " 'indirectly by inference from the conduct of the accused and surrounding circumstances from which it logically and reasonably follows.' " *People v Lawton*, 196 Mich App 341, 349; 492 NW2d 810 (1992), quoting *People v Johnson*, 54 Mich App 303, 304; 220 NW2d 705 (1974). Here, the evidence established the following: defendant chased the Howards' pickup truck for several miles, passing multiple vehicles and driving so close that the occupants of the pickup could not see his headlights. After defendant passed the truck in a no-passing zone, he braked suddenly

---

[5] An appellate court may, upon finding insufficient evidence to support a conviction, vacate that conviction and direct the trial court to enter a conviction of an included lesser offense, " 'when a conviction for a greater offense is reversed on grounds that affect only the greater offense.' " *People v Bearss*, 463 Mich 623, 631; 625 NW2d 10 (2001), quoting *Rutledge v United States*, 517 US 292, 306; 116 S Ct 1241; 134 L Ed 2d 419 (1996). This remedy is constitutionally permissible because "a jury's verdict regarding a necessarily included lesser offense always is encompassed in the verdict on the greater offense." *Bearss*, 463 Mich at 631.

-10-

enough to force the truck to move into the other lane to avoid a collision with defendant. As the truck passed defendant's vehicle, defendant pointed a handgun out the window at Howard and his family, or in the direction of the left rear tire where Howard's daughter was sitting. Defendant's daughter saw this and asked her father if he planned to shoot the Howards' tires. Howard and his daughter both feared that they would be shot, and the daughter called 911 for help immediately. This evidence was sufficient to persuade a reasonable jury that defendant threatened to shoot the Howards. Further, to the extent that defendant suggests that the evidence indicated only a threat to shoot the Howards' vehicle's tire, defendant overlooks that contact with a car is sufficient to establish a battery of its occupant. *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991). The evidence was thus more than sufficient to establish defendant's intent to put Howard and his daughter in reasonable fear or apprehension of an immediate battery. Defendant's claim that the trial court erred by denying his motion for a directed verdict is without merit.

## IV. DUE PROCESS

Finally, defendant argues that the prosecutor violated due process by impermissibly appealing to the jurors' sense of civic duty. More particularly, defendant cites to a portion of the prosecutor's opening statement, wherein the prosecutor said:

> The [P]eople submit that this type of behavior cannot be tolerated. We cannot allow people to chase down other cars, to falsely represent them[selves] as police officers, to point loaded pistols at—a pistol at other motorists.

Because defendant did not object below, we review this unpreserved claim of prosecutorial error pursuant to the plain error doctrine. *Cooper*, 309 Mich App at 88. Relief may not be granted unless the error is " 'clear or obvious' " and affected defendant's substantial rights. *Id.*, quoting *Carines*, 460 Mich at 752-753.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "The prosecutor can deny a defendant his . . . right to a fair trial by making improper remarks that 'so infect[] the trial with unfairness as to making the resulting conviction a denial of due process.' " *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014), quoting *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974).

Opening statement is the appropriate time to state facts which will be proven at trial. *People v Johnson*, 187 Mich App 621, 626; 468 NW2d 307 (1991). "Prosecutorial comments must be read as a whole and evaluated in light of . . . and the relationship they bear to the evidence admitted at trial." *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). The law recognizes that prosecutors enjoy great latitude with regard to their arguments and "are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Bahoda*, 448 Mich App 261, 282; 531 NW2d 659 (1995).

But a prosecutor may not "urge the jury to convict as part of its civic duty or on the basis of its prejudices." *People v Unger*, 278 Mich App 210, 237 749 NW2d 272 (2008) (citation omitted). Because a trial should concern nothing broader than a defendant's guilt or innocence,

-11-

"[t]he prosecutor commits misconduct when he . . . invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *Lane*, 308 Mich App at 66. For example, it was an improper appeal to a jury's sense of civic duty when the prosecutor suggested that the jury could affect Detroit's drug traffic problem by convicting the defendant. *People v Williams*, 65 Mich App 753, 756; 238 NW2d 186 (1975). Nevertheless, this Court acknowledges the fine line between proper argument based on the evidence and an improper civic duty argument, especially given that a "prosecutor is, after all, an advocate," who need not "phrase his argument in the blandest of all possible terms." *People v Phillips*, 112 Mich App 98, 113-114; 315 NW2d 868 (1982), aff'd sub nom *People v Wesley*, 421 Mich 375; 365 NW2d 692 (1984) (quotation marks and citation omitted). Notably, in addition to other comments, this Court previously decided that a prosecutor's comment in opening argument—"I hope you agree that this type of activity in this particular county, no matter where it occurs, . . . should not be tolerated"—and, again, in closing argument—"That type of activity cannot be tolerated"—did "appear to be improper 'civic duty' arguments." *People v Swartz*, 171 Mich App 364, 373; 429 NW2d 905 (1988) (citation omitted). Even so, this Court concluded reversal was not required because the "defendant failed to timely object, and there was considerable evidence of [the] defendant's guilt." *Id*. at 373-374. Furthermore, this Court "cannot find error requiring reversal when a curative instruction could have alleviated any prejudicial effect." *Unger*, 278 Mich App at 235 (quotation marks and citation omitted). Indeed, "[c]urative instructions are sufficient to cure the prejudicial effect of the most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Id*. (citations omitted). And finally, this Court declines to reverse where "isolated, improper remarks [do] not cause a miscarriage of justice." *People v Seals*, 285 Mich App 1, 25; 776 NW2d 314 (2009), citing MCL 769.26.

In this case, the prosecutor's lone remark, when considered in context with references to the specific conduct at issue, presents a close question on whether the line was crossed and an improper civic duty argument was made. *Phillips*, 112 Mich App at 113-114. Presumably, the prosecutor charged defendant because, in the prosecutor's view, defendant had engaged in conduct prohibited by the Penal Code, i.e., conduct that the representative Legislature has defined as not being tolerated. Regardless, to the extent that this isolated remark in opening statement transgressed the line, akin to the numerous remarks in *Swartz*, defendant is not entitled to relief. The evidence against defendant was compelling. And any prejudice this remark might conceivably have had on the jury was addressed in the trial court's instructions "to return a true and just verdict based only on the evidence and [court's] instructions on the law," not to allow sympathy or prejudice influence their decision, to apply the presumption of innocence unless and until the prosecutor proved each element of each crime beyond a reasonable doubt, and that the lawyers' arguments were not evidence and should be accepted only if they were supported by the evidence or the jury's own knowledge and common sense. *Unger*, 278 Mich App at 235. Jurors are presumed to follow instructions. *Id*. Thus, defendant has failed to establish that plain error occurred, that he was prejudiced, and that this singular comment so infected his trial with unfairness that his due process rights were violated.

-12-

## V.  CONCLUSION

We vacate the conviction of, and sentence for, felony impersonation of a peace officer, MCL 750.215(3), and remand to the trial court with instructions to replace that conviction with one of misdemeanor impersonation of a peace office, MCL 750.215(1), and to sentence defendant accordingly.  We otherwise affirm all of defendant's convictions and sentences.

Affirmed in part, reversed in part, and remanded for further proceedings.  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Anica Letica