*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF DETROIT,

        Plaintiff-Appellee,

V

LLOYD JOSEPH SIMPSON, JR.,

        Defendant-Appellant.

UNPUBLISHED
March 10, 2026
10:16 AM

No. 369523
Wayne Circuit Court
LC Nos. 23-002157-01-AR; 23-002158-01-AR

Before: MALDONADO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Defendant, Lloyd Simpson, Jr., appeals as on leave granted[1] the circuit court order reversing the district court's order granting Simpson's motion to dismiss for violation of his right to a speedy trial. For the reasons stated in this opinion, we affirm the circuit court order.

## I. BASIC FACTS

Simpson was arrested on July 10, 2020, during a protest. Approximately one month later, he was charged with disorderly conduct, a misdemeanor under Detroit's City Ordinances. See Detroit Ordinances, § 31-5-1. In January 2021, that case was dismissed as a result of a motion filed by the City of Detroit (the City). Approximately three months later, in May 2021, the City filed a new complaint, charging Simpson with two different misdemeanors arising from the same protest incident: interference with a government employee performing their duty, Detroit Ordinances, § 31-2-2, and loitering—impeding pedestrian or vehicular traffic, Detroit Ordinances, § 31-5-7.

---

[1] *Detroit v Simpson*, ___ Mich ___; 20 NW3d 541 (2025).

While the case was pending, Simpson made multiple demands for a jury trial. He was not incarcerated while awaiting trial. Instead, he has been enrolled in a Ph.D. program at the University of Michigan, and, according to his brief on appeal, he is employed as a teaching assistant in the University of Michigan's Department of History.

On April 5, 2023, approximately 33 months after his arrest, Simpson filed a motion to dismiss, arguing that the delay in bringing his case to trial violated his constitutional right to a speedy trial. Following a hearing on the motion, the district court dismissed the charges against him. The City filed an appeal in the circuit court, which reversed the district court and reinstated the charges. Simpson eventually filed a delayed application for leave to appeal in this Court, which we denied.[2] Thereafter, Simpson filed an application for leave to appeal in our Supreme Court, which was remanded to us for consideration as on leave granted.

## II. SPEEDY TRIAL

### A. STANDARD OF REVIEW

Simpson contends that his right to a speedy trial was violated. We review de novo issues of constitutional law, including whether a defendant was denied his or her right to a speedy trial. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The court's factual findings related to a motion to dismiss on speedy trial grounds are reviewed for clear error. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005).

### B. ANALYSIS

The right to a speedy trial is guaranteed by the United States Constitution and the Michigan Constitution. US Const, Am VI; Const 1963, art 1, § 20. In *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972), the United States Supreme Court identified four factors to consider when evaluating speedy-trial claims: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. *Id*. Michigan courts have adopted *Barker*'s balancing test to evaluate claims that a defendant has been denied his right to a speedy trial. *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 3 n 1. We consider each factor in turn.

#### 1. LENGTH OF DELAY

The first factor, which considers the length of the delay, is "to some extent a triggering mechanism." *Barker*, 407 US at 530. The particular circumstances of a case dictate what length of delay necessitates an inquiry into the other factors. *Id*. However, prejudice is presumed after a delay of eighteen or more months, "and the burden shifts to the prosecution to show that there was

---

[2] *Detroit v Simpson*, unpublished order of the Court of Appeals, entered March 19, 2024 (Docket No. 369523).

no injury." *Williams*, 475 Mich at 262. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Id*. at 261.

Simpson contends, that, as of the time that he filed his brief on appeal, the length of the delay has increased to almost 60 months and that it will continue to increase throughout the appellate process. However, "time reasonably consumed on appeal cannot be considered as in derogation of a speedy trial." *People v Chism*, 390 Mich 104, 113; 211 NW2d 193 (1973). Simpson has identified no portion of the appellate process that has led to an unreasonable delay. And, because each application for leave to appeal was filed by Simpson, any such delay would certainly be attributable to the defense, not the prosecution. Accordingly, the relevant time period runs from Simpson's arrest in July 2020 until the court dismissed his case for the second time in April 2023. The parties agree that the length of the delay was approximately 33 months. Because the delay is greater than 18 months, the City bears the burden of overcoming the rebuttable presumption of prejudice, and we must consider the remaining *Barker* factors. See *Williams*, 475 Mich at 262.

## 2. REASON FOR THE DELAY

Under the second *Barker* factor, different reasons for delay are to be weighed differently. *Barker*, 407 US at 531. "In assessing [the reason for the delay], reviewing courts may consider which portions of the delay were attributable to each party . . . and may attribute unexplained delays—or inexcusable delays caused by the court—to the prosecution." *Smith*, ___ Mich App at ___; slip op at 3. Delays between a dismissal without prejudice and the reinstatement of charges "should not be attributed to either [the prosecution or the defense] because there [were] no charges pending against [the] defendant" during the period between the dismissal and the reinstatement of charges. *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993). "[D]elays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, [but] they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (quotation marks and citation omitted). Delays caused by the COVID-19 pandemic are not attributable to the prosecution. *Smith*, ___ Mich App at ___; slip op at 1. Delays caused by requests for adjournments should be attributed to the party that requests the adjournment. See *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999) (weighing delays caused by the defense's requests for adjournments against the defense).

The trial court found that up to six months of delay were caused by Simpson's requests for an adjournment. On appeal, Simpson contends that, contrary to two entries in the register of actions, he did not request any adjournments. He directs this Court to the transcripts related to the two entries on the register of actions. However, contrary to his assertion on appeal, the transcripts do not unambiguously refute his claim that he did not request an adjournment at the hearings held on September 23, 2021, and March 29, 2022.

Instead, at the September 23, 2021, hearing, Simpson's lawyer stated that there had been an off-the-record discussion before the hearing began. She stated that she understood that a pretrial would be set for December 8, 2021, and the matter was on track for a jury trial. Nothing in the transcript contradicts the entry in the register of actions stating that Simpson's lawyer requested an adjournment and was seeking a 2022 jury trial. The fact that the request was not made on the

record is not definitive proof that the defense did not request an adjournment during the off-the-record discussion. In turn, the transcript of the March 29, 2022, hearing reflects that the matter was set for pretrial on June 7, 2022. Simpson's lawyer responded by acknowledging the date, thanking the judge, and offering her apologies. Again, there is no mention on the record as to whether Simpson's lawyer did or did not request an adjournment. But, considering that she thanked the judge for setting the new pretrial date, and offered apologies, it is reasonable to infer that the judge was accommodating her in some way. Regardless, the transcripts for both hearings are silent on the matter of whether the defense requested an adjournment, and, as a result, they do not contradict the entries in the register of actions stating that the defense requested an adjournment on both occasions. The trial court, accordingly, did not clearly err by relying upon the entries in the register of actions to conclude that the defense requested two adjournments in the case.

We note that the trial court's finding that there were two defense requests for an adjournment is consistent with the initial arguments of Simpson's lawyer. During the hearing in the district court on the motion to dismiss, the City's lawyer argued that Simpson had contributed to the delay by requesting two adjournments. In response, Simpson's lawyer stated that "[e]ven assuming arguendo that we attribute the five-month delay to Mr. Simpson, there's still an additional 28-month delay that weighs in favor [of dismissal], but its attributable to the prosecution." She did not deny requesting the adjournments. Instead, in response to the City's appeal, Simpson's lawyer expressly acknowledged that the defense "requested two adjournments during the pendency of the proceedings." She went on to argue in a brief that the delay caused by those defense requests only resulted in "12 % of the total delay." Given that Simpson has had the same lawyer for the entirety of the proceedings, we conclude that her representations in both the district court and the circuit court regarding the defense requests for an adjournment provide further support for the veracity of the entries in the register of actions.

The trial court found that the delay caused by the adjournment requests was approximately six months. That six-month delay is, therefore, properly attributed to Simpson.

The circuit court also found that a portion of the delay was caused by the COVID-19 pandemic. In doing so, the court took judicial notice of "the effects and consequences of the COVID phenomenon." The court found:

> Courts shuts down during 2020, the last nine months of 2020, and in substantial ways access to the court was not permitted and few, very few cases went to trial in 2021. Witnesses were not allowed in buildings. Jurors were not allowed in buildings.

We agree that at least part of the delay in this case is properly attributable to the COVID-19 pandemic and its impact on court administration. Again, "delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim. Unlike delays inherent in the court system which are attributable to the prosecution, delays resulting from emergency public-health measures during an unprecedented global pandemic are anything but." *Smith*, ___ Mich App at ___; slip op at 5 (citation and emphasis omitted). The record is poorly developed as to the exact length of delay in Simpson's case that is properly attributable to the COVID-19 pandemic. However, the circuit court in this case took judicial notice of the impact of COVID-19, noting that "[c]ourts shut down during 2020, the last nine months of 2020, and in

-4-

substantial ways access to the court was not permitted and few, very few cases went to trial in 2021." On appeal, Simpson acknowledges that it is "true" that "jury trials were halted for much of 2020, and to some extent" jury trials were affected "in 2021."[3] Additionally, the City has similarly stated that, because of the pandemic, the court was "shut down from March to June of 2020, and also from November 2020 to January 2021." Consequently, we conclude that the period of time when jury trials were suspended, and the delay caused by "the ensuing accumulation of cases awaiting trial," greatly contributed to the 18-month delay between Simpson's July 2020 arrest and the beginning of 2022. See *id*. at ___; slip op at 6.

Moreover, we would be remiss to not recognize that there were other reasons for the delay during that same timeframe. First, the original charges were dismissed on January 29, 2021, and different charges stemming from the same protest were charged on May 3, 2021. Because there were no charges pending against Simpson for approximately three months, that period of delay is not attributable to either the prosecution or the defense. See *Wickham*, 200 Mich App at 111. Second, the defense's first request for an adjournment occurred on September 23, 2021, which was in the timeframe when, according to the circuit court in this matter, jury trials were still being impacted by the COVID-19 pandemic. That delay is attributable to the defense, notwithstanding the fact that the court's COVID-19 response was still negatively impacting jury trials during the same timeframe.

We next consider the period of delay between the start of 2022 until Simpson filed his motion to dismiss in April 2023. Approximately three months of that delay is attributed to the defense as a result of the March 2022 request for an adjournment. The remainder of the delay appears to be related to the fact that Simpson's case was assigned at least three times between April 2022 and February 2023. It is possible these reassignments were caused by pandemic-related court administration issues, but the record does not provide an explanation. Consequently, these unexplained reassignments may be " 'technically attributable to the prosecution' " but should be " 'assigned only minimal weight.' " *Williams*, 475 Mich at 263 (citations omitted).

In sum, a substantial portion of the delay was attributable to the COVID-19 pandemic and its impact on court administrations. That portion of the delay seems to total approximately 18 months (July 2020 until January 2022). In that 18-month period, approximately three months of delay were caused by the dismissal of the original charge and then the issuance of new charges. Another three months were attributed to a defense motion for an adjournment. That means that 15 months during that 18-month period are not accountable to either the prosecution or the defense. The remaining period of delay, after January 2022, is not insubstantial. Rather it accounts for approximately another 15 months of delay. Approximately three months of that 15-month period is attributable to the defense. That leaves approximately 12 months of delay, which appear to be the result of congestion in the court and repeated judicial reassignments. That period of delay is

---

[3] Notwithstanding that acknowledgment, Simpson maintains that his case appears "to be relatively unaffected by the pandemic." His position ignores the backlog created by suspended and limited court operations throughout the pandemic. It would be inaccurate to suggest that "delays caused by the COVID-19 pandemic" excludes all delays that accrued during closures and required resolution after court operations resumed. *Smith*, ___ Mich App at ___; slip op at 5.

counted against the prosecution, but is given "minimal weight." However, considering that it accounts for more than twice the period of delay that is attributed to the defense, on balance, this factor appears to favor neither the prosecution nor the defense.

### 3. ASSERTION OF THE RIGHT TO A SPEEDY TRIAL

The next factor considers the defendant's assertion of his or her right to a speedy trial. *Barker*, 407 US at 531. It is defendant's responsibility to assert his right to a speedy trial, and such an assertion is assigned "strong evidentiary weight." *Id.* "[The] failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532. Additionally, it is important to discern between asserting the right to a *jury* trial and asserting the right to a *speedy* trial. In *Barker*, the United States Supreme Court distinguished the right to a speedy trial from other rights, including the right to demand a jury trial, in its discussion of waiver, noting a "speedy trial is unique in its uncertainty as to when and under what circumstances it must be asserted or may be deemed waived." *Id.* at 529. In contrast, the right to a jury trial "must be exercised or waived at a specific time or under clearly identifiable circumstances." *Id.* A demand for a jury trial, therefore, is not synonymous with a demand for a speedy trial.

On appeal, Simpson claims that he first asserted the right on January 22, 2021, when he filed a motion to dismiss the original charge against him.[4] He also argues the register of action entries from September 23, 2021, and March 29, 2021, reflect that he asserted his right to a speedy trial. However, the register of actions indicates that Simpson asserted his right to a jury trial on those dates. There is nothing to support a finding that he simultaneously asserted his right to a speedy trial. Rather, having considered the entirety of the record, we conclude that there is no indication that Simpson asserted his right to a speedy trial until his April 5, 2023, motion to dismiss.

In *Williams*:

The trial court weighed the third prong of the *Barker* test heavily against defendant. As of the final pretrial conference, defendant had not objected to any of the delays. Moreover, he accepted the January 9, 2002, trial date offered by the court. Further, defendant did not assert a speedy trial violation until the day before trial. Thus, the trial court did not clearly err in weighing this factor heavily against defendant. See [*People v*] *Collins*, [388 Mich 680,] 692-694[; 202 NW2d 769 (1972)] (the

---

[4] That motion was made six months after Simpson's arrest and applied to the original charge, which was dismissed on January 29, 2021. The motion was also made before the present charges were filed on May 13, 2021. Simpson has not explained how a motion to dismiss made six months after his arrest relating to a separate charge that was dismissed, functions as an assertion of his right to a speedy trial regarding the current charges. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

prejudice prong weighed heavily against a defendant who did not assert his right to a speedy trial until the day before trial). [*Williams*, 475 Mich at 263.]

Here, Simpson had no objections to the trial date when it was scheduled for 2022. He did not object to adjourning that date in 2022, nor did he object to the trial being held in January 2023. And he voiced no objections to it being held in February 2023. Yet, when it looked as if the trial would now be held at the end of April 2023, Simpson finally decided to raise a speedy-trial claim just weeks before that trial date was to begin. All of this seems fairly similar to *Williams*. Simpson had not once objected to the delays in this case until trial truly looked imminent. As such, this factor weighs heavily against a finding that Simpson's right to a speedy trial was violated.

## 4. PREJUDICE TO THE DEFENDANT

Finally, we must consider the fourth *Barker* factor: prejudice to the defendant. See *Barker*, 407 US at 521. Because prejudice is presumed in this case, the City has the burden of disproving prejudice. See *Williams*, 475 Mich at 261. "[D]eprivation of the right to a speedy trial does not per se prejudice the accused's ability to defend himself." *Barker*, 407 US at 521. Relevant to this case, the right was designed "to minimize anxiety and concern of the accused" and limit possible impairment of the defense. *Id.* at 532. However, "anxiety alone cannot establish a speedy-trial violation." *Smith*, ___ Mich App at ___; slip op at 6, citing *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997).

Here, Simpson claims he has been personally prejudiced because he experienced anxiety throughout the proceedings "from the possible long-term implications of criminal charges and wrongful conviction." In support, Simpson offers evidence of his enrollment at a Ph.D. program at the University of Michigan. Yet, it is difficult to see how his continued enrollment in a Ph.D. program is evidence that he has been "plagued by anxiety" without some indication that his grades suffered or that he sought mental health resources. That being said, it is axiomatic that there is some anxiety inherent in being charged with a crime and having to await trial. Yet, it is also axiomatic that the anxiety suffered by a defendant who is not incarcerated and who is only facing misdemeanor charges is less than that of an incarcerated defendant facing more serious charges. Accepting that Simpson has suffered some minimal anxiety, we nevertheless conclude that such anxiety, without more, is insufficient to establish a violation of his speedy-trial right. See *Gilmore*, 222 Mich App at 462.

Next, the City contends that Simpson has suffered no prejudice to his defense because no witnesses became unavailable and body-camera footage of his arrest was preserved and is available to refresh memories on both sides. And, although the City has added a sixth witness to its witness list, it notes that Simpson has only had one witness listed for the duration of the proceedings. Simpson's argument that there were many people at the protest but only one witness remained available is not persuasive. He has not specifically identified any of those potential witnesses who

have allegedly been lost.[5]  On this record, the City has met its burden to prove that no prejudice was caused by the loss of witnesses.

Still, Simpson maintains the addition of a sixth witness—another police officer—puts him at a disadvantage because he has only one witness to testify in his defense and police testimony tends to be viewed as trustworthy.  However, in *Barker*, 407 US at 521, the Supreme Court noted that delay can benefit a defendant: "As the time between the commission of the crime and trial lengthens, witnesses may become unavailable, or their memories may fade.  If the witnesses support the prosecution, its case will be weakened, sometimes seriously so."  Here, the memories of the City's witnesses may have faded, and because there are six of them, there is a chance for inconsistencies in their testimony that diminishes credibility.  Moreover, the number of witnesses a defendant presents does not determine his guilt or innocence.  *People v Phillips*, 112 Mich App 98, 109-110; 315 NW2d 868 (1982) ("The number of witnesses which a party garners is quite irrelevant in determining where the truth lies.").

Finally, several mentions of video footage have been made.  Simpson contends that this footage is not included in the record and may not be considered by this Court, citing *People v Canter*, 197 Mich App 550, 557; 496 NW2d 336 (1992).  In that case, the defendant "improperly submitted affidavits and other documentary evidence not presented in the trial court" and this Court did not consider that evidence because "review is limited to the lower court record."  *Id*. at 556-557.  It is true the footage is not contained in the record, but it is referenced in the record at least three times.  There is no suggestion the footage was improperly submitted, and while review is limited to the record, the record reflects that video footage is available to refresh recollections at trial.

## III.  CONCLUSION

Having weighed the four *Barker* factors, we conclude that Simpson's right to a speedy trial was not violated.  Accordingly, we affirm the circuit court order.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

---

[5] In *Smith*, ___ Mich App at ___; slip op at 7, the defendant conceded he could not specify which witnesses became unavailable because of the delay, and this Court found the defense was not prejudiced.